

1  Scott Edward Cole, Esq. (S.B. #160744)
   Laura Grace Van Note, Esq. (S.B. #310160)
2  **COLE & VAN NOTE**
   555 12th Street, Suite 2100
3  Oakland, California 94607
   Telephone:  (510) 891-9800
4  Facsimile:   (510) 891-7030
   Email: sec@colevannote.com
5  Email: lvn@colevannote.com
   Web:  www.colevannote.com
6
7  Attorneys for Representative Plaintiff
   and the Plaintiff Class
8
9
10               **UNITED STATES DISTRICT COURT**
11             **SOUTHERN DISTRICT OF CALIFORNIA**
12

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

| | |
|---|---|
| 13  ARIANA DEATS, individually and on behalf of all others similarly situated, | **Case No. 3:23-cv-02005-L-SBC** |
| 15                    Plaintiff, | **CLASS ACTION** |
| 16  v. | **DECLARATION OF SCOTT E. COLE, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 17  THE ZALKIN LAW FIRM, P.C., | |
| 18                    Defendant. | |

19                                  **Date:        March 18, 2024**
                                   **Time:        10:30 a.m.**
20                                  **Judge:       Hon. M. James Lorenz**
                                   **Courtroom: 5B**
21
22                                  **Pursuant to Local Rules no oral argument unless requested by the Court.**
23
24
25
26
27
28

I, Scott Edward Cole, do hereby declare as follows:

1.    I am an attorney-at-law, licensed to practice in all jurisdictions of this State, and a Shareholder at the law firm of Cole & Van Note ("CVN"), attorneys for Representative Plaintiff Ariana Deats ("Plaintiff") and the putative Plaintiff Class.

2.    I make these statements based on personal knowledge, would so testify if called as a witness at trial and have personal knowledge of the foregoing. I make this Declaration in Support of Representative Plaintiff's Motion for Preliminary Approval of Class Action Settlement. The Settlement Agreement to be reviewed for preliminary approval is filed concurrently with the Motion for Preliminary Approval.

3.    On or about April 6, 2023, Defendant The Zalkin Law Firm, P.C. ("Zalkin" or "Defendant") claimed to have discovered unauthorized activity on its network security systems (the "Data Breach").

4.    On or about September 6, 2023, Defendant began sending Notices to affected individuals. The Notice stated that the unauthorized actor compromised Plaintiff's and Class members' names, addresses, driver's license/ID numbers, Social Security numbers and medical information.

5.    On her own behalf and on behalf of all those similarly situated, Plaintiff filed the instant case on September 25, 2023, in the Superior Court of the State of California, County of San Diego, alleging 1) Negligence, 2) Breach of Implied Contract, 3) Breach of the Implied Covenant of Good Faith and Fair Dealing, 4) Violation of California's Unfair Competition Law (Cal. Bus & Prof. Code § 17200, et seq.) and 5) Unjust Enrichment. (the "Action").

6.    On October 30, 2023, the Action was removed to this Court, and is currently pending before the Honorable M. James Lorenz .

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

7. Even prior to filing the Action, Plaintiff's attorneys at CVN were armed with a detailed factual understanding of Defendant's operations and data breaches in general.

8. After the its filing, CVN continued to research Defendant's operations and the particularities of this Data Breach. The information made available to CVN prior to its negotiations with Defendant's counsel was sufficiently comprehensive to place the Parties' attorneys, each of whom are experienced class action litigators, in a position to explore settlement.

9. Following Defendant's notice to CVN that it intended to remove the Action to federal court, the Parties exchanged information informally and then engaged in informal settlement discussions, including the exchange of term sheets. The Parties narrowed the issues over the course of a couple of months. The negotiations resulted in a Settlement in principle. The Settlement Agreement attached to this Declaration as **Exhibit A** provides the long form agreement that conforms to this initial Settlement in principle. The Settlement Agreement provides substantial benefits to the Settlement Class, eliminates the costs and burdens of continued litigation and fully accomplishes Plaintiff's goals in this Action.

10. No Trial date has been set and no class has been certified. The Settlement Class and the proposed Class in the operative Complaint are the same (i.e., all individuals whose information was involved in the Data Breach).

**SETTLEMENT PROCESS**

11. Our office conducted a thorough investigation into the facts of this Action. Plaintiff has vigorously prosecuted this case, and Defendant has vigorously contested it. I believe that the Parties' discussions during negotiations are sufficient for the Parties to make an informed decision about a fair resolution of this Action.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

1    12.    The Parties began negotiating settlement shortly after the case was
2    removed to federal court. Due to the Parties' extensive experience in data breach and
3    class action litigation, the Parties were able to determine the principle of the matter
4    relatively quickly and spent the majority of the negotiations on the more nuanced
5    details of the agreement. The Settlement Fund was negotiated first, with the Parties
6    fine-tuning terms such as Attorney's Fees and a Service Award throughout the
7    negotiations.

8    13.    The Parties reached a Settlement in principle of the matter through
9    arm's-length negotiations in December 2023. The Parties continued to negotiate
10   various settlement terms throughout December and January. This process
11   culminated in the Settlement Agreement accompanying this Motion. No side
12   agreements were made (i.e., the Settlement Agreement is the only agreement
13   between the Parties).

14   14.    The Parties diligently worked on a Notice Plan, Notices, Claim Forms
15   and other exhibits alongside the long-form Settlement Agreement up until filing this
16   Motion for Preliminary Approval. Redline drafts were exchanged.

17   15.    The long-form Settlement Agreement was finalized and signed as of
18   January 16, 2024. A true and correct copy of the Agreement is filed concurrently
19   with this Motion. The requested Attorneys' Fees of up to $99,750, plus
20   reimbursement for costs are substantially less in this Settlement as compared with
21   other data breach settlements. This is because the Parties were able to avoid
22   extensive motion practice via resolving disputes with minimal court intervention. In
23   an effort to decrease legal fees, the Parties cooperated with each other and engaged
24   in settlement discussions early, and met and conferred about notices and removal.

25

26

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-4-
DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT**

16.    The information CVN acquired through its pre-filing investigation, and knowledge of this industry enabled CVN to properly and intelligently value these claims for purposes of settlement, assess the risks of continued litigation and otherwise determine what terms of settlement would be fair and reasonable. As a result, it is clear that the discovery process has been involved and thorough, placing Plaintiff and her counsel in an excellent position to evaluate the merits and value of this lawsuit.

17.    The area of data breach litigation is, in my opinion, still in its infancy. Few, if any, data breach trials have been conducted and class certification presents unique damages analysis challenges. Nonetheless, various independent studies have been conducted regarding data breach victim experiences, some of which seek to quantify the average loss for data breach victims. The one I find most compelling is the Ponemon Institute's study entitled "The Aftermath of a Data Breach: Consumer Sentiment"    (https://www.ponemon.org/research/ponemon-library/security/the-aftermath-of-a-data-breach-consumer-sentiment.html). Therein, for example, the study concludes that the average damage per class member (in a case such as the instant one) is $38 per person. Of course, every case is different and each of the potential variances should be taken into consideration is evaluating a fair settlement. That consideration, in connection with my 30+ years litigating various types of class actions, is what I did in connection with this case.

18.    Coupled with these realities is that, here, adversarial class certification was far from guaranteed and, even if class certification was achieved, there would still be the usual risks attendant to trial. And damages could be a moving target—unlike, say, in a wage and hour matter—the tools available to quantify damages in a data breach case are far fewer; there are no payroll records to compile, no employment contracts to review, no predictable calculation of overtime rates.

DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    Perhaps for reasons such as that, data breach cases in California such as *In re: Hanna*

2    *Andersson and Salesforce.com Data Breach Litig.*, No. 3:20-cv-00812-EMC (N.D.

3    Cal. 2020) and *Cochran v. Kroger*, No. 5:21-cv-01887 (N.D. Cal. 2022) resulted in

4    a settlements valued at under $3.00 per class member. And the damages in other

5    cases sometimes resulted in levels even lower. *See In re Target Corp. Customer*

6    *Data Sec. Breach Litig.*, No. 14-2522, 2017 U.S. Dist. LEXIS 75455, at *5 (D. Minn.

7    May 17, 2017), *aff'd*, 892 F.3d 968, 979 (8th Cir. 2018) ($0.10 per class member);

8    *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 16-MD-02752, 2020 U.S. Dist.

9    LEXIS 129939, at *47 (N.D. Cal. July 22, 2020) ($0.64 per class member). And yet,

10   our settlement guarantees Class Member a predictable and substantial result. The

11   amount does not fluctuate and does not require a Claims Process. While individuals

12   choose not to participate in class action settlements for myriad reasons, those who

13   do participate here (i.e., do not opt out) will be, all things considered, generously

14   rewarded for claims oft difficult to prove. Finally, the settlement obviates the risk of

15   delay, of appeal and so on.

16       19.    Further, the requested attorneys' fees and attorneys' costs is

17   substantially less in this settlement, as compared with other data breach settlements.

18   This is because the Parties were able to avoid substantial pleading challenges,

19   motion practice and formal discovery by resolving their disputes, and the ultimate

20   dispute, with minimal court intervention. In an effort to decrease legal fees, and

21   while staying firm in their positions when needed, the Parties cooperated with each

22   other. This cooperation left <u>more</u> funds available to put toward the settlement, as

23   opposed to those available funds being paid and/or earmarked for defense litigation

24   costs/fees. In all, when compared to other data breach settlements, the value

25   provided to the Settlement Class here is significant, and the fees modest and well-

26   deserved. Thus, it merits approval.

27

28

-6-

DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

## THE PROPOSED CLASS REPRESENTATIVE

20.    After thoroughly interviewing Ms. Ariana Deats, my office determined her claims were likely typical of the other Class members and she would be an adequate representative plaintiff. Throughout the litigation to date, my opinion in this regard has not wavered.

21.    I am not aware of any antagonism or conflict of interest between Ms. Deats and the putative Class. In fact, Representative Plaintiff has been involved in this case and has been in routine contact with my firm. Additionally, she assisted with the prosecution efforts that included frequent emails and telephone calls with counsel, production of documents and communications surrounding mediation and settlement.

22.    A service (or enhancement) award for the named Plaintiff will be sought in the amount of $3,500. Ms. Deats' alleged claims are similar to those of the Class. She stepped forward and was available as a proposed class representative, filed a lawsuit and worked with her attorneys as needed throughout the litigation. Ms. Deats was available for questions and to supply documents to her attorneys and vigorously litigated her case. Ms. Deats expended time and resources in litigating her case. Her effort should be rewarded. Moreover, the Service Award was finalized after the primary terms were finalized.

## THE PROPOSED SETTLEMENT ADMINISTRATOR

23.    The Class Notice will be distributed by the Claims Administrator. The Parties ask the Court to appoint CPT Group ("CPT") as the Claims Administrator. CPT is an established and respected class action administrator. The fee to be paid to CPT was negotiated to be a *flat fee*, making this element of the Settlement greatly beneficial to the Class. CPT agreed to a flat fee of $15,000. In my experience, this

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  is a reasonable amount in relation to the size of the Class and the value the Settlement

2  provides to Class members.

4  **EXPERIENCE, QUALIFICATION AND VIEWS ON SETTLEMENT**

5      24.    My firm acted as Class Counsel, and I was actively involved in the

6  bulk of the proceedings on this case. I am familiar with this litigation and the

7  proposed Settlement. The experience of my firm helped inform the settlement

8  negotiations in this case.

9      25.    CVN, the law firm I founded in 1992, is a specialized practice devoted

10  almost exclusively to prosecuting class action matters, and has so engaged in that

11  area of practice for the near entirety of its existence. In its over 30-year history, CVN

12  has prosecuted hundreds of class and/or complex/representative cases. A selection

13  of the some of the more unique cases are identified in the firm's professional resume,

14  attached to this Declaration as **Exhibit D**. Most of these cases involved many of the

15  same legal issues as are presented in the current action. I was directly involved in

16  much of the day-to-day work in this case.

17      26.    While almost entirely devoted today to prosecuting cybersecurity class

18  actions, CVN's past experiences run deep against various areas of the law—from

19  employment wage and hour and discrimination cases, to consumer, personal injury

20  and environmental class actions/mass tort cases. It has successfully achieved class

21  certification in varied factual scenarios, some of the more unique or difficult

22  situations being set forth in the firm's resume. Some better-known and/or "game

23  changing" cases include: *Kurihara v. Best Buy Co., Inc.*, 2007 U.S. Dist. LEXIS

24  64224 (N.D. Cal. Aug. 29, 2007) (obtaining certification for a class of over 52,000

25  current and former store employees bringing bag check claims); *Tierno v. Rite Aid*

26  *Corp.*, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) (oft-cited Order

27  certifying a class of approximately 1,100 California retail store managers alleging

DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1    overtime misclassification); *Torres v. ABC Security*, Case No. RG04158744

2    (Alameda County Superior Court 2006) (obtaining certification of a class of over

3    1,600 security guards working at scores of different work sites); *Fulton v. Sports and*

4    *Fitness Clubs of America, dba 24 Hour Fitness, USA, Inc.*, San Diego County

5    Superior Court Case No. GIC881669 (consolidated with Case No. GIC873193)

6    (Order certifying class of over 7,000 fitness club group exercise instructors); *Rowe*

7    *v. California Commerce Club*, Los Angeles County Superior Court Case No.

8    BC321283 (consolidated with Case No. BC288079) (Order certifying tip-pooling

9    claims on behalf of a class of approximately 2,000 card room dealers); *Rodriguez v.*

10    *Pleasanton Fitness*, Contra Costa County Superior Court Case No. MSC17-00376)

11    (Order certifying two classes of fitness club workers). This list is far from being

12    exhaustive.

13         27.      CVN's track record is equally impressive with regard to settlements

14    and adjudications. For example, I was co-counsel in the landmark California

15    Supreme Court decision providing that non-exempt worker time spent under the

16    control of the employer is compensable. *See Augustus vs. ABM Security Services.*,

17    Supreme Court of California Case No. S224853 ($110 million settlement on behalf

18    of roughly 15,000 security guards). Additionally, I co-prosecuted what was, at the

19    time (and perhaps still is), the largest class action settlement of a meal break-only

20    case. *See Despres v. United Parcel Service, Inc.,* California Northern District Court

21    Case No. 3:03-CV-02987 (TEH) and No. 3:03-CV-02001 (TEH) ($87 million

22    settlement on behalf of roughly 20,000-person class). I prosecuted, obtained a

23    judgment and thereafter negotiated a two-tiered $19 million settlement on behalf of

24    fitness club group exercise instructors for unpaid wage and unreimbursed business

25    expense claims. *See Fulton v. Sports and Fitness Clubs of America, dba 24 Hour*

26    *Fitness, USA, Inc.,* San Diego County Superior Court Case No. GIC881669

27    (consolidated with Case No. GIC873193). I have prosecuted and settled a $15

28

-9-

DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

1  million non-reversionary settlement on behalf of a class of approximately 68,000
2  security guards for meal and rest break violations. *See Securitas Security Services*
3  *Cases,* Santa Clara County Superior Court Case No. 1-05-CV-047499. I additionally
4  negotiated a $7.5 million settlement on behalf of a class of retail Assistant Managers
5  for uncompensated time spent undergoing security checks and failure to provide
6  meal and rest breaks. *See Kelly v. Walgreens,* San Francisco County Superior Court
7  Case No. CGC-07-464347. I also brokered a $6.9 million settlement on behalf of a
8  class of over 1,000 allegedly misclassified retail Store Managers. *See Tierno v. Rite*
9  *Aid Corp.,* California Northern District Court Case No. 3:05-CV-02520 (TEH). I
10 further served as court-appointed lead counsel after fierce competition for that
11 appointment in a consolidated action of nine lawsuits against Walgreen Co. bringing
12 a variety of wage and hour claims on behalf of approximately 43,000 retail store
13 workers in California. After several years of litigation, I negotiated a $23 million
14 settlement in that case. *See, In Re Walgreen Co. Wage and Hour Litigation*, United
15 States District Court, Central District of California Case No. 2:11-CV-07664. We
16 have many additional resolutions within the settlement range exhibited above and
17 scores of others of lesser notoriety.

18      28.    Drawing upon that diverse background, CVN is currently devoted
19 almost entirely to the prosecution of data breach class actions, with the vast bulk of
20 its caseload being cases involving almost identical legal and factual issues to those
21 presented in the instant case. In these matters, CVN serves in a variety of roles,
22 oftentimes in various leadership positions. For example, CVN has served as court-
23 appointed lead or co-lead counsel in various data breach matters, including, but not
24 necessarily limited to: *Henderson, et al. v. Reventics, LLC*, Case No. 1:23-cv-00586-
25 MEH (D. Colo.) (court appointed co-lead counsel); *Hinds, et al. v. Community*
26 *Medical Centers, Inc.*, Case No. STK-CV-UNPI-2021-10404 (Super. Ct. Cal. San
27 Joaquin Cnty.) (court appointed co-lead counsel); *Tsvetanova, et al. v. UCSD*
28

1  *Health*, Case No. 37-2021-00039888-CU-PO-CTL (Super. Ct. Cal. San Diego

2  Cnty.) (court appointed co-lead counsel); *In Re: Rackspace Data Security Litigation*,

3  No.: SA-22-cv-01296-XR (W.D. Tex.) (court appointed lead counsel*); Fedorys, et*

4  *al. v. Ethos Group Inc.*, Case No. 3:22-cv-2573-M (N.D. Tex.) (court appointed co-

5  lead counsel); *Moreland, et al. v. 1st Franklin Financial Corporation*, Case No.

6  2:23-cv-00038-SCJ (N.D. Ga.) (court appointed co-lead counsel); *Domitrovich, et*

7  *al. v. MC Dean, Inc.*, Case No. 1:23-cv-00210-CMH-JFA (E.D. Va) (court appointed

8  co-lead counsel); *Deevers, et al. v. Wing Financial Services, LLC.*, Case No. 4:22-

9  cv-00550-CVE-MTS (N.D. Okla.) (court appointed co-lead counsel); *Darrin v.*

10  *Huntington Ingalls Industries, Inc.*, Case No. 4:23-cv-00053-JKW-DEM (E.D. Va.)

11  (court appointed co-lead counsel); *Guerrero v. Merritt Healthcare Holdings, LLC*,

12  Case No. 3:23-cv-00389-MPS (D. Conn.) (court appointed co-lead counsel);

13  *Prutsman v. Nonstop Administration and Insurance Services, Inc.*, Case No. 3:23-

14  Cv-01131-VC (N.D. Cal.) (court appointed co-lead counsel); *In re DISH Network*

15  *Data Security Incident Litigation*, Case No. 1:23-cv-01168-RMR-SBP (D. Colo.)

16  (court appointed co-lead counsel); *Byers v. Orthoalaska, LLC*, Case No. 3:23-cv-

17  00243-SLG (D. Alaska) (court appointed co-lead counsel). CVN also serves in more

18  informal (e.g., stipulated) leadership positions in numerous other data breach cases

19  and in sole counsel roles in dozens more—actions currently venued across roughly

20  30 states.

21    29.   I am a well-respected leader in the field of class action litigation, have

22  achieved record results in both settlements and judgments in such cases, have

23  authored numerous scholarly publications, including the book Fallout (chronicling

24  the 1994 toxic substance release by Unocal and the ensuing legal battle), and have

25  been called upon to serve as a regular speaker at public seminars on issues

26  surrounding employment law and class action procedures. I have prosecuted class

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12th STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

1  actions across numerous fields, including, employment, consumer, environmental,

2  and data breach cases.

3      30.    The basis for my opinion that this Settlement falls within the range of

4  reasonableness is further derived from research relating to the filing of the case and

5  issues of the case, multiple discussions with counsel for Defendant relating to case

6  management and the settlement negotiations themselves. The Settlement provides

7  for a Settlement Fund of $285,000. Shared among 523 individuals, this is an

8  extraordinary result in a data breach case where values per class member often hover

9  in the $5-10 range.

10     31.    I believe this settlement falls within the range of reasonableness and

11  warrants approval. Given that this Settlement is being distributed *pro rata* with no

12  cap to the maximum value a Class member can receive, all or nearly all Class

13  members who make claims can receive full value or close to full value for their

14  claims. I am not aware of any other cases that will be affected by this Settlement.

15     32.    The basis for my opinion is derived from research relating to the filing

16  of the case and issues of the case, multiple discussions with counsel for Defendant

17  relating to case management, settlement negotiations, reviewing and analyzing

18  documents, participating in settlement negotiations including drafting of term sheets

19  and other settlement documents, multiple phone conferences relating to the

20  resolution and the drafting of this Declaration in Support of Preliminary Approval.

21

22                        **EXHIBITS**

23     33.    Attached hereto and marked as **Exhibit A** is a true and correct copy of

24  the fully executed Settlement Agreement and Release of Claims ("Agreement")

25  entered into by the Representative Plaintiff, individually, and on behalf of the

26  putative Class, and Defendant.

27

28

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

34.    Attached hereto and marked as **Exhibit B** is the Claim Form agreed upon by the Parties as part of the Settlement Agreement.

35.    Attached hereto and marked as **Exhibit C** is a proposed Long Class Notice to be distributed to the Class according to the procedures outlined in the motion for preliminary approval and the Settlement Agreement.

36.    Attached hereto and marked as **Exhibit D** is a true and correct copy of CVN's professional resume which outlines some of this firm's experience litigating complex/class action cases like this one.

I declare, under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 15th day of February 2024, at Oakland, California.


_/s/Scott Edward Cole_
Scott Edward Cole, Esq.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

-13-

DECLARATION OF SCOTT EDWARD COLE, ESQ. ISO PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT // 3:23-cv-02005-L-SBC

# Exhibit A

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Plaintiff Ariana Deats ("Plaintiff" or "Class Representative"), on behalf of herself and all others similarly situated, and Defendant Zalkin Law Firm, P.C. ("Zalkin" or "Defendant") (collectively, the "Parties"), hereby enter into this Class Action Settlement Agreement and Release ("Settlement Agreement" or "Agreement"), subject to Court approval. In consideration of the mutual promises, agreements, and covenants contained herein, the sufficiency and receipt of which are hereby acknowledged, the Parties stipulate and agree as follows:

## I.    RECITALS

**WHEREAS**, on September 25, 2023, Plaintiff filed in the Superior Court of the State of California, County of San Diego, a civil action captioned *Deats v. The Zalkin Law Firm, P.C.*, Case No. 37-2023-00041615-CU-NPCTL. Plaintiff's Complaint alleged (i) Negligence; (ii) Breach of Implied Contract; (iii) Breach of The Implied Covenant of Good Faith and Fair Dealing; (iv) Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.); and (v) Unjust Enrichment.

**WHEREAS**, on October 30, 2023, Plaintiff's Complaint was removed to United States District Court, Southern District of California and titled *Ariana Deats, individually, and on behalf of all others similarly situated v. Zalkin Law Firm, et al.*, United States District Court, Southern District of California Case No. 3:23-cv-02005-L-SBC, which is currently pending before the Honorable M. James Lorenz (the "Action").

**WHEREAS**, in the Complaint, Plaintiff seeks to certify a class (hereinafter the "Class" or "Class Members") defined as follows:

All individuals whose protected health information or personally identifiable information was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on or about April 6, 2023.

**WHEREAS**, in the Complaint, Plaintiff seeks the appointment of Scott Edward Cole of Cole & Van Note as Class Counsel to represent the Class Members.

**WHEREAS**, Zalkin denies liability, and Plaintiff and Zalkin recognize the outcome of the Action and the claims asserted in the Complaint are uncertain, and that pursuing the Action to judgment would entail substantial cost, risk, and delay;

**WHEREAS**, the Parties have explored and discussed at length the factual and legal issues in the Action, participated in extensive, arm's-length negotiations and have agreed to a global, final settlement of the Action that renders the need for further litigation unnecessary;

**WHEREAS**, the Parties desire to compromise and settle all issues, claims, and facts asserted in the Action, or that could have been asserted based upon the facts alleged in the Action, by or on behalf of Plaintiff and the Class;

**WHEREAS**, Plaintiff, by and through Class Counsel (as defined in section II.C., below), have: (a) made a thorough investigation of the facts and circumstances surrounding the allegations asserted in the Action; (b) engaged in investigation of the claims asserted in the Action, including informal discovery obtained by Plaintiff in connection with the Action and prior to execution of this Agreement, and (c) evaluated and considered the law applicable to the claims asserted in the Action, including the defenses that Zalkin likely would assert;

1

WHEREAS, Class Counsel are experienced in this type of class litigation, recognize the costs and risks of prosecution of this Action, and believe that it is in Plaintiff's interest, and the interest of all Class Members, to resolve this Action, and any and all claims against Zalkin arising from the conduct alleged in the Action, and in this Settlement Agreement;

WHEREAS, Zalkin does not believe Plaintiff's claims are meritorious and has denied and continues to deny any and all claims alleged by Plaintiff, and has denied and continues to deny that it is legally responsible or liable to Plaintiff or any member of the Class for any of the matters and claims asserted in this Action, but has concluded that settlement is desirable to avoid the time, expense, and inherent uncertainties of defending protracted litigation and to resolve, finally and completely, all pending and potential claims of Plaintiff and all members of the Class relating to claims which were or could have been asserted by Plaintiff and the Class in this Action relating to the alleged practices and confidentiality breach at issue;

WHEREAS, the Parties agree that the proposed settlement is fair, adequate and reasonable;

WHEREAS, significant arm's-length settlement negotiations have taken place between the Parties and, as a result, this Settlement Agreement has been reached without collusion, subject to the Court approval process set forth herein;

WHEREAS, the undersigned Parties believe this Settlement Agreement offers significant benefits to Class Members and is fair, reasonable, adequate and in the best interest of Class Members; and

WHEREAS, this Settlement Agreement is made and entered into by and between Plaintiff, individually, and on behalf of the Class, and Zalkin;

NOW, THEREFORE, it is hereby stipulated and agreed, by and between the undersigned Parties, as follows:

## II.    DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meaning set forth below. Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

A.    "Action" means *Ariana Deats, individually, and on behalf of all others similarly situated v. Zalkin Law Firm, et al.*, United States District Court, Southern District of California Case No. 3:23-cv-02005-L-SBC, which is currently pending before the Honorable M. James Lorenz.

B.    "Class" means the class defined as "All individuals whose protected health information or personally identifiable information was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on or about April 6, 2023." Officers, directors, employees, and agents of Defendant who received a Notice of Data Breach letter are excluded from the Class.

C.    "Class Counsel" means Scott Edward Cole of Cole & Van Note.

D.    "Class Counsels' Fees and Expenses" means the reasonable attorneys' fees and expenses of Class Counsel, paid from the Settlement Fund, subject to approval of the Court.

E.    "Claim Form" means the form a Final Settlement Class member must submit to receive a Settlement Share under this Agreement, substantially similar to **Exhibit 2**.

2

F.    "Class Members" and "Settlement Class Members" have the same meaning as "Class," as set forth in paragraph C above.

G.    "Class Notice" means the Court-approved form of notice to the Class substantially similar to **Exhibit 1** hereto, mutually prepared and agreed upon by the Parties, informing the Class of, among other things, (i) the preliminary approval of the Settlement; (ii) the scheduling of the Final Approval Hearing; (iii) the settlement benefits available to Class Members; and (iv) their opportunity to participate in, object to, or exclude themselves from, the Settlement.

H.    "Class Notice Date" means the date by which the Settlement Administrator (as defined in section II.BB., below) completes the mailing of a copy of the Class Notice by first class mail, postage prepaid, to each Class Member.

I.    "Class Representative" means Ariana Deats.

J.    "Complaint" means Plaintiff's operative complaint in the Action.

K.    "Court" means the United States District Court for the Southern District of California.

L.    "Defendant's Counsel" means Manatt, Phelps & Phillips, LLP.

M.    "Effective Date" means the date by when: (a) if there are no objections to the settlement submitted, or any timely objections have been submitted and then withdrawn before entry of the Final Approval Order, then the date the Court enters the Final Approval Order; or (b) if an objection to the settlement has been submitted by a member of the Final Settlement Class found by the Court to have standing to object, thirty-five (35) calendar days after the Court enters the Final Approval Order; or (c) if any appeal, writ, or other appellate proceeding opposing the Court's Final Approval Order has been filed by a member of the Final Settlement Class found by the Court to have standing to object, five (5) business days after any appeal, writ, or other appellate proceedings opposing the Final Approval Order have been finally and conclusively dismissed with no right to pursue further remedies or relief.

N.    "Final Approval Hearing" means the hearing at which the Court will consider and decide whether to enter the Final Approval Order and at which the Court may or may not consider and approve payment of any Incentive Award and Class Counsels' Fees and Expenses.

O.    "Final Approval Order" means the order of the Court that approves this Settlement Agreement and makes such other final rulings as are contemplated by this Settlement Agreement, which may or may not include approving payment of any Incentive Award and Class Counsels' Fees and Expenses.

P.    "Final Settlement Class" refers to all members of the Settlement Class who do not timely and validly exclude themselves from the Class in compliance with the exclusion procedures set forth in this Agreement.

Q.    "Incentive Award" means the amount to be paid to the Class Representative to compensate her for the time and effort on behalf of the Class, subject to approval of the Court, and which shall not exceed an amount of three thousand, five hundred dollars ($3,500.00).

R.    "Mailed Notice" means the Class Notice sent by U.S. Mail.

3

S.     "Objection Date" means forty-five (45) days from the Class Notice Date, or a date otherwise ordered by the Court, for members of the Class to object to the Settlement Agreement's terms or Class Counsels' Fees and Expenses, and to submit any required statements, proof, or other materials and/or argument.

T.     "Parties" means collectively the Plaintiff and Defendant.

U.     "Plaintiff" means the Class Representative, as defined above.

V.     "Preliminary Approval Order" means the order of the Court preliminarily approving this Settlement Agreement.

W.     "Released Claims" means the claims released by this Settlement Agreement, as set forth in Section IX.

X.     "Released Parties" means Zalkin, and its parents, subsidiaries, predecessors, successors, divisions, joint ventures, affiliates and related entities and all of their respective past and present directors, officers, employees, partners, principals, agents, attorneys, insurers, reinsurers, assigns, and related or affiliated entities.

Y.     "Request for Exclusion" means a timely and valid request by any Class Member for exclusion from the Settlement. To the extent any Class Member delivers both a timely and valid Claim Form to the Settlement Administrator and a timely and valid request for exclusion, the request for exclusion will be deemed to be invalid and the Claim Form will be processed.

Z.     "Request for Exclusion Deadline" means forty-five (45) days from the Class Notice Date, or a date otherwise ordered by the Court, for members of the Class to request exclusion from the Settlement.

AA.     "Settlement" and "Settlement Agreement" means the agreement by the Parties to resolve this Action, the terms of which have been memorialized herein.

BB.     "Settlement Administrator" means CPT Group.

CC.     "Settlement Share" refers to the pro rata payment as calculated in Section IV.E. to which a member of the Final Settlement Class who timely submits a valid Claim Form becomes entitled pursuant to this Settlement. To be timely, a member of the Final Settlement Class must submit a timely and valid Claim Form within forty-five (45) days from the Class Notice Date, or a date otherwise ordered by the Court.

## III.     **REQUIRED EVENTS**

Promptly after execution of this Settlement Agreement by all Parties:

A.     Class Counsel and Defendant's Counsel shall take all reasonable and necessary steps to obtain entry of the Preliminary Approval Order and obtain entry of the Final Approval Order. Class Counsel, with Zalkin's pre-filing review, shall prepare and file all documents in connection with the Motion for Preliminary Approval and the Motion for Final Approval.

B.     In the event that the Court fails to issue the Preliminary Approval Order, or fails to issue the Final Approval Order, the Parties agree to use their best efforts, consistent with this Settlement Agreement, to cure any defect(s) identified by the Court. If, despite their best efforts, the Parties cannot

4

cure said defects, the Settlement Agreement is voidable at the election of Plaintiff or Defendant with each party returning to their respective pre-settlement posture and without prejudice or waiver to any party's pre-settlement position on any legal or factual issue.

C.      The Parties acknowledge that prompt approval, consummation, and implementation of the Settlement set forth in this Agreement are essential. The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement Agreement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and/or information reasonably necessary or appropriate to carry out the terms of this Settlement Agreement and the transactions contemplated hereby.

D.      Upon Entry of the Final Approval Order, the Court shall enter Judgment in accordance with the terms of this Settlement Agreement. The Final Order and Judgment shall enjoin the prosecution of any litigation or class action by Plaintiff or any Class Member related to or arising out of the Complaint and Action.

## IV.     SETTLEMENT TERMS

A.      **Cash Payment:** Zalkin agrees to pay Plaintiff and the Class Members two hundred, eighty-five thousand dollars ($285,000.00). This cash payment will be referred to as the "Settlement Fund." No later than ten (10) calendar days after the Preliminary Approval Date, Defendant will advance to the Settlement Administrator the estimated cost of preparing and mailing or emailing the Notice of Class Action Settlement to Class Members. The balance of the amount required by Defendant to be paid to the Settlement Administrator in connection with the Final Approval Order will be due within ten (10) calendar days of the Effective Date of Class Settlement. The Settlement Administrator shall establish a Qualified Settlement Fund (QSF), as defined by 26 C.F.R. 1.468B-1, for the deposit of the payment of the balance of the Settlement Fund. Under no circumstances will Zalkin have any further monetary payment obligation other than the payment of the Settlement Fund. There will be no reversion of the Settlement Fund to Zalkin.

B.      **Payments from Settlement Fund**: The cost of settlement administration, including notice and distributions to members of the Final Settlement Class, the costs of administrating the Settlement Fund, and reasonable fees of the Settlement Administrator, Class Counsels' Fees and Expenses, and Class Representatives' Incentive Awards shall be paid exclusively from the Settlement Fund. There will be no reversion of the Settlement Fund to Zalkin.

C.      **Incentive Awards to the Class Representatives:** The Plaintiff will request an Incentive Award payment from the Settlement Fund in an amount not to exceed three thousand, five hundred dollars ($3,500.00) in recognition of the risks taken by Plaintiff as the Class Representative in commencing the Action, both financial and otherwise. The incentive award will be paid from the Settlement Fund and shall be in addition to any other compensation provided to Plaintiff as a Class Member.

D.      **Payment of Plaintiff's Attorneys' Fees and Costs**: Plaintiff will request payment for her counsel of reasonable attorneys' fees from the Settlement Fund in an amount not to exceed Ninety-nine thousand, seven hundred and fifty dollars ($99,750.00), which is 35 percent (35%) of the Settlement Fund, plus reimbursement of their litigation costs.

E.      **Payment of Settlement Share to Class Members:** Each member of the Final Settlement Class who submits a timely and valid Claim Form shall be entitled to receive a pro rata cash distribution payment from the Settlement Fund referred to as the "Settlement Share." The Settlement Administrator shall calculate the Settlement Share by (i) taking the Settlement Fund; (ii) subtracting the amounts to be paid for cost of settlement administration, including notice to Class Members and reasonable fees of the

5

Settlement Administrator, Class Counsels' Fees and Expenses, and Class Representatives' Incentive Award, as approved by the Court (= Z); and, then, (iii) dividing the sum of such number by the number of Class Members who do not opt out of the Settlement and who submit a timely and valid Claim Form within forty-five (45) days from the Class Notice Date (= X) as represented in the following formula:

$$\text{Settlement Share} = \frac{\text{Settlement Fund} - Z}{X}$$

## V.     REQUESTS FOR CASH PAYMENTS BY CLASS MEMBERS

A.     Members of the Final Settlement Class will be required to submit a Claim Form to receive a pro rata cash distribution payment from the Settlement Fund referred to as the "Settlement Share." Each Final Settlement Class member is limited to the submission of one Claim Form and, in no event, shall a Final Settlement Class member receive more than one Settlement Share. The Settlement Administrator will issue Settlement Share checks only to Final Settlement Class members who submit timely and valid Claim Forms. To be entitled to receive a Settlement Share under this Agreement, Class Members must properly complete a Claim Form and timely deliver it to the Settlement Administrator within forty-five (45) days from the Class Notice Date. The delivery date for submission of a Claim Form is deemed to be the date (a) the form is deposited in the U.S. Mail as evidenced by the postmark, in the case of submission by U.S. Mail, or (b) in the case of submission electronically through the settlement website, the date the Settlement Administrator receives the form, as evidenced by the transmission receipt. Any Class Member who fails to submit a valid and timely Claim Form will not receive a Settlement Share under this Agreement.

B.     The Settlement Administrator shall provide Class Counsel and Defendant's counsel with a weekly report informing them of any and all Claim Forms received by to the Settlement Administrator during each week following the Class Notice Date. The Settlement Administrator must prepare a Declaration identifying the number of Claim Forms and serve copies on Defendant's counsel and Class Counsel no later than seven (7) days after the deadline for submission of Claim Forms.

C.     Amount of Settlement Share Checks sent to Class Members: The amount of each Settlement Share check sent to members of the Final Settlement Class who submit a timely and valid Claim Form will be determined by the Settlement Administrator by making a calculation of a pro rata cash distribution payment from the Settlement Fund to all members of the Final Settlement Class who submit a timely and valid Claim Form pursuant to Sections IV.E. and V.A.

D.     Disbursement of Settlement Share Checks: Within thirty (30) days of Effective Date, the Settlement Administrator will disburse Settlement Share checks or make electronic payments to each Final Settlement Class member who submits a timely and valid Claim Form pursuant to Sections IV.E. and V.A. For any Settlement Share check that is mailed and returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator will make reasonable efforts to find a valid address, including skip tracing, and resend any returned Settlement Share check within thirty (30) days after the Settlement Share check is returned to the Settlement Administrator as undeliverable.

E.     Failure to Cash Settlement Share Checks: Absent a demonstration of reasonable circumstances for excuse, any Settlement Share check not cashed within ninety (90) days of issuance (based on the date of the check) will be deemed expired. Any member of the Final Settlement Class who does not cash their Settlement Share check within the aforementioned time period may petition the Settlement Administrator within thirty (30) days of the expiration of their uncashed check to reissue their Settlement Share check, and the Settlement Administrator will issue a new check. Members of the Final Settlement

6

Class are entitled to only one petition on this basis, and any Settlement Share check reissued for such reasonable circumstances will expire within thirty (30) days of issuance (based on the date of the check). Final Settlement Class members who do not timely cash their Settlement Share checks and fail to petition for a reissuance of the uncashed Settlement Share check will be considered as having waived any right to a cash payment under the Settlement Agreement. In no event will a Final Settlement Class member be permitted to cash a check once the value of uncashed checks has been paid to a *cy pres* organization (pursuant to Section V.F.).

      F.    <u>Payment of Uncashed Checks to a Cy Pres Organization (if necessary)</u>: The total amount of uncashed Settlement Share checks will be paid to Child USA (https://childusa.org/) and approved by the Court to a charitable organization that conducts services the Court deems appropriate given the facts underlying the Action.

## VI.    <u>SETTLEMENT ADMINISTRATION</u>

      A.    <u>Engagement of Settlement Administrator</u>. Promptly upon entry of the Preliminary Approval Order, the Parties shall engage CPT Group as the Settlement Administrator, which shall be paid reasonable fees, estimated not to exceed $20,000, exclusively from the Settlement Fund. All expenses incurred in administering this Settlement Agreement, including, without limitation, the cost of the Class Notice, settlement website, 800 number, the cost of distributing and administering the benefits of the Settlement Agreement, and the Settlement Administrator's reasonable fees shall be paid to the Settlement Administrator from the Settlement Fund, subject to approval of the Court.

      B.    <u>Duties of Settlement Administrator</u>. In addition to other duties as set forth in this Agreement, the Settlement Administrator shall be solely responsible for the following:

        1.    Preparing, printing, and disseminating the Class Notice to Class Members.

        2.    Not later than twenty (20) days after the Court's entry of a Preliminary Approval Order, sending by First Class Mail (and to email addresses where applicable and available) the Class Notice to all known Class Members. The Parties agree to use their best efforts and to work cooperatively to obtain the best practicable Class Member contact information prior to the date of the first Mailed Notice.

        3.    From the date of the first Mailed Notice and, thereafter, for six (6) months after the Effective Date, maintaining (i) the settlement website, www.Zalkinprivacyclassacation.com, that will include information about how to contact Class Counsel and how to submit a Claim Form, a copy of the Class Notice, and a copy of the Settlement Agreement; and (ii) an 800 number with recorded answers to commonly asked settlement questions and reference to the settlement website.

        4.    Keeping track of Requests for Exclusion, including maintaining the original mailing envelope in which each request was mailed.

        5.    Keeping track of Claim Forms, including maintaining the original mailing envelope in which each form was mailed.

        6.    Keeping track of objections, including maintaining the original mailing envelope in which each objection was mailed.

7.  Keeping track of all other communications from Class Members, including maintaining the original mailing envelope in which any communication was mailed.

8.  Maintaining adequate records of its activities, including the dates of each mailing of Class Notices, returned mail and other communications and attempted written or electronic communications with Class Members.

9.  Promptly furnishing to counsel for the Parties (i) copies of any Requests for Exclusion from Class Members; (ii) copies of objections by Class Members; and (iii) all other written or electronic communications received from Class Members.

10. Determining whether Requests for Exclusion comply with the terms of this Agreement and are timely and valid and effective to exclude the submitting Class Member from the Class.

11. Determining whether Claim Forms comply with the terms of this Agreement and are timely and valid.

12. Promptly preparing and distributing any revocation of a Request for Exclusion to the submitting Class Member. Revocations shall set forth the reasons for revocation, including the reason(s) the Request for Exclusion fails to comply with the terms of this Agreement.

13. Promptly preparing and distributing any revocation of a Claim Form to the submitting Class Member. Revocations shall set forth the reasons for revocation, including the reason(s) the Claim Form fails to comply with the terms of this Agreement.

14. Delivering to the Parties' counsel in a reasonably timely manner, but in no event later than ten (10) court days before the Final Approval Hearing, a written report concerning all Requests for Exclusion, all Claim Forms, all revocations of Requests for Exclusion and Claim Forms, and all objections.

15. Establishing a Qualified Settlement Fund (QSF), as defined by 26 C.F.R. 1.468B-1, for the deposit of the payment of the Settlement Fund, ensuring that all taxes associated with the administration of the Settlement Fund are timely paid to the appropriate tax authorities and all tax filings are timely filed, which shall be paid from the Settlement Fund.

16. Determining the Settlement Share of each member of the Final Settlement Class in accordance with this Agreement.

17. Preparing a list of Final Settlement Class members.

18. Not later than thirty (30) days after the Effective Date, distributing the Settlement Share of each Final Settlement Class member who submitted a timely and valid Claim Form by sending a check by First Class Mail, or by sending a payment electronically, to each such member in the amount of the Settlement Share.

19. Not later than ten (10) days after the Effective Date, distributing any Incentive Award approved by the Court by sending a check by First Class Mail in the amount of the award approved by the Court, to the Class Representative.

20. Not later than fifteen (15) days after the Effective Date, preparing and distributing, in accordance with this Agreement and Final Approval Order, or Final Approval Order on Fees, Class Counsel's Attorneys' Fees and Costs.

21. Confirming in writing its completion of the administration of the Settlement.

## VII. REQUESTS FOR EXCLUSION BY CLASS MEMBERS

A. Any Class Member may make a Request for Exclusion by mailing such request in writing to the Settlement Administrator at the address set forth in the Class Notice. Any Request for Exclusion must be postmarked not later than forty-five (45) days after the date of Mailed Notice or such other date specified in the Court's Preliminary Approval Order. The Request for Exclusion shall (i) state the Class Member's full name and current address, and be personally signed, and (ii) specifically state his or her desire to be excluded from the Settlement and from the Class. Failure to comply with these requirements and to timely submit the Request for Exclusion will result in the Class Member being bound by the terms of the Settlement.

B. Any Class Member who submits a timely Request for Exclusion may not make any objections to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

C. The Settlement Administrator shall provide Class Counsel and Defendant's counsel with a weekly report informing them of any Requests for Exclusion received by the Settlement Administrator during each week following the Class Notice Date. The Settlement Administrator must prepare a Declaration attaching all Requests for Exclusion received with the Court and serve copies on Defendant's counsel and Class Counsel no later than seven (7) days after the deadline for submission of the Requests for Exclusion.

D. No party will solicit or encourage Requests for Exclusion. Any attempt to do so by Plaintiff or Defendant will be deemed a material breach of this Settlement Agreement.

## VIII. OBJECTIONS TO SETTLEMENT BY CLASS MEMBERS

A. Any Class Member may make an objection to the proposed Settlement by mailing a letter to the Settlement Administrator at the address set forth in the Class Notice. Any objection to be considered valid must be mailed and postmarked no later than the Objection Date, i.e., forty-five (45) days from the date of Mailed Notice or such date as otherwise ordered by the Court. Any Class Member who has submitted a Request for Exclusion may not submit any objections at the Final Approval Hearing.

B. To state a valid objection to the Settlement, an objecting Class Member must mail a letter to the Settlement Administrator setting forth all of the following information in writing: (i) the objector's full name, current address, current telephone number, and be personally signed; (ii) documentation sufficient to establish membership in the Class, such as a copy of the Class Notice he or she received; (iii) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position; (iv) provide copies of any other documents that the objector wishes to submit in support of his/her position; (v) whether the objecting Class Member intends to appear at the Final Approval Hearing; and (vi)

9

whether the objecting Class Member is represented by counsel and if so, the name, address, and telephone number of his/her counsel.

C.    Subject to approval of the Court, any objecting Class Member may appear, in person or by counsel, at the Final Approval Hearing held by the Court, but must file a notice of intention to appear at the Final Approval Hearing ("Notice of Intention to Appear") at least fifteen days prior to the Final Approval Hearing or such other date set by the Court. By this provision, the Parties are not waiving and are expressly preserving their right to contest any appearance by an objector on any grounds, or from asserting any and all other potential defenses and privileges to any such appearance. The Notice of Intention to Appear should include copies of any papers, exhibits, or other evidence that the objecting Class Member (or his/her counsel) will present to the Court in connection with the Final Approval Hearing.

D.    The agreed-upon procedures and requirements for submitting objections in connection with the Final Approval Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any objections to the Settlement Agreement, in accordance with the due process rights of all Class Members. The Preliminary Approval Order and Class Notice will require all Class Members who have any objections to submit the objections to the Settlement Administrator at the address set forth in the Class Notice, by no later than the Objection Date.

E.    Class Counsel will defend the Court's Final Approval Order, Final Approval Order on Fees, Judgment, and any related orders, in the event of an appeal.

## IX.    **RELEASE OF CLAIMS**

A.    Plaintiff and Class Members who fail to timely make a Request for Exclusion from the Settlement release Defendant and Released Parties from any and all claims or causes of action alleged in the Action or which could have been alleged based on the legal theories, legal authorities, or facts asserted regardless of whether such claims arise under federal, state or local law, statute, ordinance, regulation, common law, or other source of law, including all claims under the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, *et seq*. and Business & Professions Code §§ 17200, *et seq*., as well as any and all claims, causes of action, damages, penalties, attorneys' fees, costs, and any other form of relief or remedy in law, equity, of whatever kind or nature and for any relief whatsoever, including monetary, injunctive, or declaratory relief, whether direct or indirect, whether under federal law or the law of any state, local law and/or regulation, which the Plaintiff or any Class Member has against Defendant or the Released Parties for any acts that were pleaded or could have been pleaded in the Action based on the facts, subject matter, or the factual or legal allegations in the Complaint ("Released Claims"). The Released Claims do not include any personal injury or medical malpractice claims of any Class Members. The scope of the Released Claims is limited to claims in connection with the Notice of Data Breach Letter that were pleaded or could have been pleaded in the Action based on the facts, subject matter, or the factual or legal allegations in the Action.

B.    Plaintiff and Class Members expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of section 1542 of the California Civil Code with respect to the Released Claims. Section 1542 of the California Civil Code provides:

> **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party..."**

C.      This Settlement Agreement does not affect the rights of Class Members who submit a timely and valid Request for Exclusion from the Settlement Agreement.

D.      Upon issuance of the Final Approval Order: (i) the Settlement Agreement shall be the exclusive remedy for any and all Class Members, except those who have opted out in accordance with the provisions hereof; (ii) Defendant and Released Parties shall not be subject to liability or expense of any kind to any Class Member(s) for reasons related to the Action except as set forth herein; and (iii) Class Members shall be permanently barred from initiating, asserting, or prosecuting any and all Released Claims against Defendant and Released Parties.

## X.      REPRESENTATIONS, WARRANTIES, AND COVENANTS

A.      Class Counsel represent and warrant that they have the authority, on behalf of Plaintiff, to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby. This Settlement Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiff and constitutes their legal, valid, and binding obligations.

B.      Zalkin, through its undersigned attorneys, represents, and warrants that it has the authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby. The execution, delivery, and performance by Zalkin of this Settlement Agreement and the consummation by it of the actions contemplated hereby have been duly authorized by all necessary corporate action on the part of Zalkin. This Settlement Agreement has been duly and validly executed and delivered by Zalkin and constitutes its legal, valid, and binding obligations.

## XI.     MISCELLANEOUS PROVISIONS

A.      This Settlement Agreement is not to be used in evidence (except in connection with obtaining approval of this Settlement Agreement and enforcing its terms) and shall not at any time be construed or deemed to be any admission or concession by Zalkin with respect to any alleged wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of a Final Approval Order as contemplated herein. Zalkin specifically denies all of the allegations made in connection with the Action. Neither this Settlement Agreement nor any class certification pursuant to it shall constitute, in this or in any other proceeding, an admission by Zalkin, or evidence or a finding of any kind, that any requirement for class certification is satisfied with respect to the Action, or any other litigation, except for the limited purpose of settlement pursuant to this Settlement Agreement. This Settlement Agreement is also made with the Parties' express understanding and agreement that, if for any reason this Settlement is not approved by the Court, Zalkin may continue to contest and deny that any class, including the proposed Settlement Class, is suitable for certification as a class under the law of any jurisdiction.

B.      This Settlement Agreement is entered into only for purposes of settlement. In the event that the Final Approval Order is not entered, or a Final Approval Order is subsequently reversed on appeal, the Parties agree to use their best efforts to cure any defect(s) identified by the Court. If, despite their best efforts, the Parties cannot cure said defects, this Settlement Agreement, including any releases or dismissals hereunder, is canceled, and no term or condition of this Settlement Agreement, or any draft thereof, or of the discussion, negotiation, documentation or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose, or used for any purposes whatsoever in the Action, and all Parties shall be restored to their prior rights and positions as if the Settlement Agreement had not been entered into.

      C.     The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

      D.     Capitalized words, terms and phrases are used as defined in Section II, above.

      E.     This Settlement Agreement may not be modified or amended except in writing and signed by all of the Parties.

      F.     This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

      G.     Except as otherwise provided in this Settlement Agreement, each party to this Settlement Agreement shall bear his, her, or its own costs of the Action.

      H.     The Parties to this Settlement Agreement reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement, as well as to correct any inadvertent, non-substantive mistakes or typographical errors contained in any of the Settlement documents.

      I.     The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, the release. The Court expressly retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement, including, but not limited to, orders enjoining Class Members from prosecuting claims that are released pursuant to the Settlement Agreement as provided herein, and allowing for discovery related to objectors, if any.

      J.     The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. Because this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Settlement Agreement.

      K.     This Settlement Agreement constitutes the entire, fully integrated agreement among the Parties and cancels and supersedes all prior written and unwritten agreements and understandings pertaining to the Settlement of the Action.

      L.     The Parties agree that any disputes regarding the meaning of the terms and conditions of this Settlement Agreement, the Parties' rights and obligations under this Settlement Agreement, and as to any disagreement regarding the manner in which any issue or dispute arising under this Settlement Agreement should be resolved, shall be submitted to the Court for resolution.

      M.     All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this agreement or by order of the Court, the day of the act, or default, from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period shall run until the end of the next day that is not one of the aforementioned days. Each of the Parties reserves the right, subject to the Court's approval, to seek any

reasonable extensions of time that might be necessary to carry out any of the provisions of this agreement, and to modify or supplement any notice contemplated hereunder.

N.       Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this agreement shall not be deemed a waiver of any provision of this agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions herein.

O.       All notices to the Parties or counsel required by this Settlement Agreement shall be made in writing and communicated by electronic and regular mail to the following addresses (unless one of the Parties subsequently designates one or more other designees):

For Class Counsel:                          For Defendant:

Scott Edward Cole                           Naeun Rim
sec@colevannote.com                         NRim@manatt.com
Cole & Van Note                             Manatt, Phelps & Phillips, LLP
555 12th St., Suite 2100                    2049 Century Park East, Suite 1700
Oakland, CA 94607                           Los Angeles, CA 90067


IN WITNESS WHEREOF, Plaintiff and Zalkin, by and through their respective counsel, have executed this Settlement Agreement as of the date(s) indicated on the lines below.

Dated: 1/18/2024

*Ariana Deats*
ID 67995eTfr3aW1xWPI7fi72aw

Ariana Deats
Plaintiff

Dated: 1/17/24

Scott Edward Cole, Esq.
**Attorneys for Plaintiff/Class Counsel**

Dated: 1/16/2024

Print: Irwin Zalkin, President
As the Duly Authorized Corporate Representative of Defendant Zalkin Law Firm

Dated: 1/16/2024

Naeun Rim
**Attorneys for Defendant**

13

# Exhibit 1

## If you were notified by the Zalkin Law Firm, P.C. of a Data Incident that occurred in April 2023, you may be entitled to a Cash Payment

*A state court has authorized this Notice. This is* not *a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit against the Zalkin Law Firm, P.C. ("Defendant" or "Zalkin") regarding an alleged data incident (the "Incident") that allegedly resulted in an unauthorized access to Zalkin's network.

- You are a "Settlement Class Member" if your protected health information ("PHI") or personally identifiable information ("PII") was alleged to be compromised in the Incident. Zalkin mailed Settlement Class Members notice of the Incident in or after April 2023, and Settlement Class Members are also receiving notice of this Settlement.

- Zalkin has agreed to pay Plaintiff and the Settlement Class $285,000.00 (the "Settlement Fund") to settle the claims in this Litigation. All Settlement Class Members can submit a timely Claim Form for a **Cash Payment:** All Settlement Class Members who submit a valid and complete Claim Form are eligible to receive a pro rata cash distribution payment from the Settlement Fund referred to as the "Settlement Share" in an amount depending upon how many Settlement Class Members file valid claims.

- This settlement is not an admission or concession by Zalkin of any liability, fault, or wrongdoing of any kind, nor is it a concession that any Settlement Class Member directly or indirectly suffered any damages, harm, or loss. However, Zalkin has concluded that settlement is desirable to avoid the time, expense, and inherent uncertainties of defending protracted litigation.

### This Notice may affect your rights. Please read it carefully.

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive the cash payment benefit is to submit a claim form by the deadline. | **MONTH DD, 2024** |
| **EXCLUDE YOURSELF** | If you ask to be excluded, you will not receive a cash payment, but you may be able to file your own lawsuit against Zalkin, for the same claims. This is the only option that leaves you the right to file your own lawsuit against Zalkin for the claims that are being resolved by the Settlement. In order to be effective, you must submit a request for exclusion by the deadline. | **MONTH DD, 2024** |
| **OBJECT** | If you do not exclude yourself from the Settlement Class, you may submit an objection telling the Court why you do not like the Settlement. If your objection is overruled, you will be bound by the Settlement. | **MONTH DD, 2024** |
| **DO NOTHING** | If you do nothing, you will remain in the Settlement Class and forfeit your right to receive the cash payment benefit. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement and the requested attorneys' fees, service awards, and costs. No settlement benefits or payments will be provided unless and until the Court approves the Settlement and it becomes final.

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

1

BASIC INFORMATION.................................................................................................PAGE 3
    1. Why is this Notice being provided?
    2. What is this lawsuit about?
    3. Why is the lawsuit a class action?
    4. Why is there a Settlement?

WHO IS INCLUDED IN THE SETTLEMENT? ...........................................................PAGE 3
    5. How do I know if I am part of the Settlement?
    6. Are there exceptions to being included in the Settlement?
    7. What if I am still not sure whether I am part of the Settlement?

THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY ...................PAGE 4
    8. What does the Settlement provide?

HOW TO GET BENEFITS FROM THE SETTLEMENT ...............................................PAGE 4
    9. How do I submit a claim for the cash payment benefit?
    10. What am I giving up to receive Settlement benefits or stay in the Settlement Class?
    11. What are the Released Claims?
    12. What happens if my contact information changes after I submit a claim?
    13. When will I receive my Settlement Benefits?

THE LAWYERS REPRESENTING YOU .......................................................................PAGE 5
    14. Do I have a lawyer in this case?
    15. How will Class Counsel be paid?

OPTING OUT OF THE SETTLEMENT ........................................................................PAGE 6
    16. How do I get out of the Settlement?
    17. If I opt out, can I get anything from the Settlement?
    18. If I do not opt out, can I sue the Defendant for the same thing later?

OBJECTING TO THE SETTLEMENT ..........................................................................PAGE 6
    19 How do I tell the Court that I do not like the Settlement?
    20. What is the difference between objecting and asking to opt out?

THE FINAL APPROVAL HEARING ............................................................................PAGE 7
    21. When and where will the Court decide whether to approve the Settlement?
    22. Do I have to attend the Final Approval Hearing?
    23. May I speak at the Final Approval Hearing?

IF YOU DO NOTHING .................................................................................................PAGE 8
    24. What happens if I do nothing at all?

GETTING MORE INFORMATION................................................................................PAGE 8
    25. How do I get more information?

**Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx**

**2**

## BASIC INFORMATION

**1.  Why is this Notice being provided?**

A federal court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable M. James Lorenz of the United States District Court for the Southern District of California is overseeing this class action. The case is known as *Deats v. The Zalkin Law Firm, P.C.*, Case No. 3:23-cv-02005-L-SBC (the "Litigation"). The person who filed this lawsuit is referred to here as the "Plaintiff" or "Class Representative," and the entity sued, The Zalkin Law Firm, P.C., is referred to here as "Zalkin" or the "Defendant."

**2.  What is this lawsuit about?**

The Litigation alleges that, on or around April 2023, Zalkin was the victim of a data incident whereby an unauthorized person gained access to Zalkin's network. The data allegedly accessed may have included Plaintiff's and/or Settlement Class Members' personally identifiable information (PII) or protected health information (PHI).

Zalkin denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing or that any law has been violated. Zalkin denies these and all other claims made in the Litigation. By entering into the Settlement, Zalkin is not admitting any wrongdoing.

**3.  Why is the lawsuit a class action?**

In a class action, Class Representatives sue on behalf of all people who have similar claims. Together, in the context of a settlement like this one, these people are called a Settlement Class or Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those Settlement Class Members who timely exclude themselves (opt-out) from the Settlement Class.

The Class Representative in this case is Ariana Deats.

**4.  Why is there a Settlement?**

Plaintiff and the Defendant do not agree about the claims made in this Litigation. The Litigation has not gone to trial, and the Court has not decided in favor of the Plaintiff or the Defendant. Instead, Plaintiff and the Defendant have agreed to settle the Litigation. Plaintiff and the attorneys for the Settlement Class ("Class Counsel") believe the Settlement is best for all Settlement Class Members because of the Settlement Benefits made available under the Settlement, because of the risks and uncertainty associated with continued litigation, and because of the nature of the defenses raised by the Defendant.

## WHO IS INCLUDED IN THE SETTLEMENT?

**5.  How do I know if I am part of the Settlement?**

You are a Settlement Class Member if your personal information was alleged to have been compromised in the Incident. Zalkin previously mailed notice of the Incident to Settlement Class Members, and notice of this

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

3

Settlement was sent to Settlement Class Members. If you are not sure whether you are a Settlement Class Member, you may contact the Settlement Administrator at 1-XXX-XXX-XXXX.

**6.   Are there exceptions to being included in the Settlement?**

Yes. Excluded from the Settlement Class are Defendant and its managing agents and representatives, the judge presiding over the Litigation and members of their immediate family, and Class Members who submit a Request for Exclusion.

**7.   What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Settlement Class Member, you may go to the settlement website at www.Zalkinsettlement.com or call the Settlement Administrator's toll-free number at 1-xxx-xxx-xxx.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8.   What does the Settlement provide?**

Zalkin has agreed to pay $285,000.00 (the "Settlement Fund") to settle this Litigation. The Settlement Fund will be used to pay benefits to the Settlement Class Members who file valid and timely claims, the costs of notice and claims administration, attorneys' fees and costs and a service award to the Plaintiff. If you are a Settlement Class Member, you may be able to receive a cash payment by completing a claim form, located at www.Zalkinsettlement.com. By submitting a valid claim using the claim form, you are eligible to receive a cash payment (prorated depending upon how many Settlement Class Members file valid claims).

## HOW TO GET BENEFITS FROM THE SETTLEMENT

**9.   How do I submit a claim for the cash payment benefit?**

Settlement Class Members seeking the cash payment benefit must submit a valid claim form to the Settlement Administrator by **Month Day, 2024**. You will need your Unique ID to file a claim form online. Your Unique ID can be found on the notice mailed/emailed to you. If you did not receive a notice but believe you are a Settlement Class Member, or if you no longer have your Unique ID, contact the Settlement Administrator at 1-xxx-xxxx.

Claim forms can be submitted online at www.Zalkinsettlement.com or by mail. If by mail, the claim form must be **postmarked** by **Month Day, 2024**. The quickest way to submit a claim is online. Claim Forms are also available by calling 1-xxx-xxx-xxx or by writing to:

Zalkin Settlement Administrator
PO Box xxxx
xxxxx, xx xxxx-xxxx

**10.   What am I giving up to receive Settlement benefits or stay in the Settlement Class?**

Unless you exclude yourself (opt-out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Defendant and Released Parties about the legal issues

in this Litigation that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

**11.  What are the Released Claims?**

The Settlement Agreement describes the Released Claims, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.Zalkinsettlement.com or in the public Court records on file in this Lawsuit. For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the lawyers listed in Question 14 (below) for free, or you can talk to your own lawyer at your own expense.

**12.  What happens if my contact information changes after I submit a claim?**

If you change your mailing address or email address after you submit a claim form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-xxx-xxx-xxxx, by emailing XXX@XXXXX.com, or by writing to:

Zalkin Settlement Administrator<br>
PO Box xxxx<br>
xxxx, xx xxxxx-xxxx

**13.  When will I receive my Settlement Benefits?**

If you file a timely and valid claim form, payment will be provided by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.Zalkinsettlement.com for updates.

# THE LAWYERS REPRESENTING YOU

**14.  Do I have a lawyer in this case?**

Yes, the Court has appointed Scott Edward Cole of Cole & Van Note, 555 12th Street, Ste. 2100, Oakland, CA 94607; (510) 891-9800 as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Litigation.

**15.  How will Class Counsel be paid?**

Class Counsel will file a motion asking the Court to award attorneys' fees of $99,750.00, plus reasonable litigation costs and expenses to Class Counsel. They will also ask the Court to approve a Service Award of $3,500 to the Plaintiff for participating in this Litigation and for her efforts in achieving the Settlement. If awarded by the Court, attorneys' fees and costs and the Service Awards will be paid out of the Settlement Fund. The Court may award less than these amounts.

Class Counsel's application for attorneys' fees, costs, and service award will be made available on the settlement website at before the deadline for submission of objections.

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

5

## OPTING OUT OF THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue the Defendant on your own based on the claims raised in this Litigation or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from or "opting-out" of the Settlement.

### 16. How do I get out of the Settlement?

To opt-out of the Settlement, you must mail a written notice of intent to opt-out. The written notice must be signed by you and include your name and address, and clearly state that you wish to be excluded from the Settlement Class.

The opt-out request must be **postmarked** and sent to the Settlement Administrator at the following address by **Month Day, 2024**:

Zalkin Settlement Administrator
Exclusions
PO Box xxxx
xxxxx, xx xxxxx-xxxx

You cannot exclude yourself by telephone or by email.

### 17. If I opt out, can I get anything from the Settlement?

No. If you opt out, you are telling the Court you do not want to be part of the Settlement. You can only get Settlement benefits if you stay in the Settlement. If you opt out, do not submit a claim form.

### 18. If I do not opt out, can I sue the Defendant for the same thing later?

No. Unless you opt-out, you give up any right to sue the Defendant and Released Parties (which includes Zalkin, and its parents, subsidiaries, predecessors, successors, divisions, joint ventures, affiliates and related entities and all of their respective past and present directors, officers, employees, partners, principals, agents, attorneys, insurers, reinsurers, assigns, and related or affiliated entities) for the claims this Settlement resolves and releases relating to Incident. You must opt-out of this Litigation to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

### 19. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement or requested attorneys' fees, costs, and service awards. You can also give reasons why you think the Court should not approve the Settlement or attorneys' fees, costs, and service awards. To object, you must mail timely written notice as provided below no later than **Month Day, 2024**, stating you object to the Settlement. The objection must include all the following additional information:

1) Your full name, current address, current telephone number;
2) The case name and number — *Deats v. The Zalkin Law Firm, P.C.*, Case No. 3:23-cv-02005-L-SBC (United States District Court, Southern District of California).

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

6

3) Information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class (e.g., copy of your postcard notice, copy of the original notice of the Incident, or a statement explaining why you believe you are a Settlement Class Member);

4) A written statement of the position you wish to assert, including the legal and factual grounds for the position;

5) Copies of any other documents you wish to submit in support of your position;

6) The identity of any and all counsel representing you in connection with the objection;

7) A statement whether you or your counsel will appear at the Final Approval Hearing; and

8) Your signature or the signature of your duly authorized attorney or other duly authorized representative (if any) representing you in connection with the objection.

To be timely, written notice of an objection in the appropriate form must be mailed, postmarked no later than **Month DD, 2024,** to the Settlement Administrator at the following address:

Zalkin Settlement Administrator
PO Box xxxx
XXXXXX, XX XXXX-XXXX

Any Settlement Class Member who fails to comply with the requirements for objecting in Section VIII of the Settlement Agreement waives and forfeits any and all rights they may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the litigation.

---

### 20. What is the difference between objecting and asking to opt out?

Objecting is simply telling the Court you do not like something about the Settlement or requested attorneys' fees, costs, and service award. You can object only if you stay in the Settlement Class (meaning you do not opt-out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt-out, you cannot object to the Settlement.

# THE FINAL APPROVAL HEARING

### 21. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on **Month Day, 2024, at X:XX a/p.m.** before Judge M. James Lorenz at Edward J. Schwartz, United States Courthouse, 221 West Broadway, San Diego, California 92101, Courtroom 5B.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's application for attorneys' fees, costs and expenses, and the service awards to the Plaintiff. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

Note: The date and time of the Final Approval Hearing are subject to change. Any change will be posted on the settlement website.

### 22. Do I have to attend to the Final Approval Hearing?

---

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

7

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to speak about it. As long as you mail your written objection on time, the Court will consider it.

### 23. May I speak at the Final Approval Hearing?

Yes, as long as you do not exclude yourself (opt-out), you can (but do not have to) participate and speak for yourself in this Litigation and Settlement. This is called making an "appearance." You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Section 19 (above) and specifically include a statement whether you and your counsel (if any) will appear at the Final Approval Hearing.

## IF YOU DO NOTHING

### 24. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing (including not filing a claim), you will not receive any Settlement Benefits. You will also give up rights explained in the "Opting Out of the Settlement" section of this Notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendant or any of the Released Parties about the legal issues in this Litigation that are released by the Settlement Agreement relating to the Incident.

## GETTING MORE INFORMATION

### 25. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.Zalkinsettlement.com, by calling 1-xxx-xxx-xxxx or by writing to:

Zalkin Settlement Administrator
PO Box xxxx
XXXXX, XX XXXXX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR ITS
CLERK'S OFFICE REGARDING THIS NOTICE.**

**Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx**

8

# Exhibit 2

**Must be postmarked or
submitted online NO
LATER THAN
Month Day, 2024**

Zalkin Data Incident Settlement Administrator
P.O. BOX XXX
XXXXX, XX XXXXXX
www.Zalkinsettlement.com

# Zalkin Law Firm, P.C. Data Incident Settlement Claim Form

## CASH SETTLEMENT BENEFITS - WHAT YOU MAY GET

If your personally identifiable information and/or personal health information was alleged to have been compromised as a result of a data incident (the "Incident") first announced by the Zalkin Law Firm, P.C. ("Zalkin") on or about April 2023, you are a Settlement Class Member and may submit a claim for Settlement Benefits. If you received notice of this settlement, you have been identified by Zalkin as a Settlement Class Member and you may submit a claim for Settlement Benefits. The settlement is not an admission or concession by Zalkin of any liability, fault, or wrongdoing of any kind, nor is it a concession that any Settlement Class Member directly or indirectly suffered any damages, harm, or loss.

**The easiest way to submit a claim is online at www.Zalkinsettlement.com**, or you can complete and mail this Claim Form to the mailing address above. All Settlement Class Members who submit a Valid Claim for the Cash Payment Benefit are eligible to receive a pro rata cash distribution payment from the Settlement Fund referred to as the "Settlement Share" in a prorated amount depending upon how many valid Claim Forms are submitted.

**Claims must be submitted online or mailed by Month Day, 2024. Use the address at the top of this form for mailed claims.**

*Please note: The Settlement Administrator may contact you to request additional documents to process your claim.*

For more information on the Settlement benefits, what documents you need to attach, how the Settlement Administrator will decide whether to approve your payments, and for complete instructions, **visit www.Zalkinsettlement.com**.

**Settlement benefits will be distributed only after the Settlement is approved by the Court.**

## Your Information

*We will use this information to contact you and process your claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing XXX@XXXXX.com*

First Name                                        MI    Last Name

Mailing Address

City                                                            State    ZIP Code

Phone Number

Email Address

Unique ID (located on the notice mailed to you)

## How You Would Like to Receive Your Cash Payment

If you made a claim for a cash payment in this Claim Form, you could elect to receive your payment either by check or as a digital payment. Checks must be cashed within 90 days of receiving them.

Which do you prefer?

☐ Check mailed to me

☐ Digital payment instructions emailed to the email address I provided on page 2

## Signature

I declare under penalty of perjury under the laws of the United States of America that the information supplied in this Claim Form is true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Claims Administrator before my claim is complete.

_____                    Date: _____ – _____ – _____
Signature                                                              MM      DD      YYYY

_____
Print Name

# Exhibit B

<table>
<tr><td><strong>Must be postmarked or submitted online NO LATER THAN Month Day, 2024</strong></td><td>Zalkin Data Incident Settlement Administrator<br>P.O. BOX XXX<br>XXXXX, XX XXXXXX<br><u>www.Zalkinsettlement.com</u></td></tr>
</table>

## Zalkin Law Firm, P.C. Data Incident Settlement Claim Form

### CASH SETTLEMENT BENEFITS - WHAT YOU MAY GET

If your personally identifiable information and/or personal health information was alleged to have been compromised as a result of a data incident (the "Incident") first announced by the Zalkin Law Firm, P.C. ("Zalkin") on or about April 2023, you are a Settlement Class Member and may submit a claim for Settlement Benefits. If you received notice of this settlement, you have been identified by Zalkin as a Settlement Class Member and you may submit a claim for Settlement Benefits. The settlement is not an admission or concession by Zalkin of any liability, fault, or wrongdoing of any kind, nor is it a concession that any Settlement Class Member directly or indirectly suffered any damages, harm, or loss.

**The easiest way to submit a claim is online at www.Zalkinsettlement.com**, or you can complete and mail this Claim Form to the mailing address above. All Settlement Class Members who submit a Valid Claim for the Cash Payment Benefit are eligible to receive a pro rata cash distribution payment from the Settlement Fund referred to as the "Settlement Share" in a prorated amount depending upon how many valid Claim Forms are submitted.

**Claims must be submitted online or mailed by Month Day, 2024. Use the address at the top of this form for mailed claims.**

*Please note: The Settlement Administrator may contact you to request additional documents to process your claim.*

For more information on the Settlement benefits, what documents you need to attach, how the Settlement Administrator will decide whether to approve your payments, and for complete instructions, **visit www.Zalkinsettlement.com**.

**Settlement benefits will be distributed only after the Settlement is approved by the Court.**

## Your Information

*We will use this information to contact you and process your claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing XXX@XXXXX.com*

First Name

MI

Last Name

Mailing Address

City

State

ZIP Code

Phone Number

Email Address

Unique ID (located on the notice mailed to you)

## How You Would Like to Receive Your Cash Payment

If you made a claim for a cash payment in this Claim Form, you could elect to receive your payment either by check or as a digital payment. Checks must be cashed within 90 days of receiving them.

Which do you prefer?

☐ Check mailed to me

☐ Digital payment instructions emailed to the email address I provided on page 2

## Signature

I declare under penalty of perjury under the laws of the United States of America that the information supplied in this Claim Form is true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Claims Administrator before my claim is complete.

_____
Signature

Date: _____ – _____ – _____
        MM      DD       YYYY

_____
Print Name

# Exhibit C

## If you were notified by the Zalkin Law Firm, P.C. of a Data Incident that occurred in April 2023, you may be entitled to a Cash Payment
*A state court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit against the Zalkin Law Firm, P.C. ("Defendant" or "Zalkin") regarding an alleged data incident (the "Incident") that allegedly resulted in an unauthorized access to Zalkin's network.

- You are a "Settlement Class Member" if your protected health information ("PHI") or personally identifiable information ("PII") was alleged to be compromised in the Incident. Zalkin mailed Settlement Class Members notice of the Incident in or after April 2023, and Settlement Class Members are also receiving notice of this Settlement.

- Zalkin has agreed to pay Plaintiff and the Settlement Class $285,000.00 (the "Settlement Fund") to settle the claims in this Litigation. All Settlement Class Members can submit a timely Claim Form for a **Cash Payment:** All Settlement Class Members who submit a valid and complete Claim Form are eligible to receive a pro rata cash distribution payment from the Settlement Fund referred to as the "Settlement Share" in an amount depending upon how many Settlement Class Members file valid claims.

- This settlement is not an admission or concession by Zalkin of any liability, fault, or wrongdoing of any kind, nor is it a concession that any Settlement Class Member directly or indirectly suffered any damages, harm, or loss. However, Zalkin has concluded that settlement is desirable to avoid the time, expense, and inherent uncertainties of defending protracted litigation.

### This Notice may affect your rights. Please read it carefully.

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive the cash payment benefit is to submit a claim form by the deadline. | **MONTH DD, 2024** |
| **EXCLUDE YOURSELF** | If you ask to be excluded, you will not receive a cash payment, but you may be able to file your own lawsuit against Zalkin, for the same claims. This is the only option that leaves you the right to file your own lawsuit against Zalkin for the claims that are being resolved by the Settlement. In order to be effective, you must submit a request for exclusion by the deadline. | **MONTH DD, 2024** |
| **OBJECT** | If you do not exclude yourself from the Settlement Class, you may submit an objection telling the Court why you do not like the Settlement. If your objection is overruled, you will be bound by the Settlement. | **MONTH DD, 2024** |
| **DO NOTHING** | If you do nothing, you will remain in the Settlement Class and forfeit your right to receive the cash payment benefit. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement and the requested attorneys' fees, service awards, and costs. No settlement benefits or payments will be provided unless and until the Court approves the Settlement and it becomes final.

**Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx**

1

BASIC INFORMATION.................................................................................PAGE 3
    1. Why is this Notice being provided?
    2. What is this lawsuit about?
    3. Why is the lawsuit a class action?
    4. Why is there a Settlement?

WHO IS INCLUDED IN THE SETTLEMENT? ..............................................PAGE 3
    5. How do I know if I am part of the Settlement?
    6. Are there exceptions to being included in the Settlement?
    7. What if I am still not sure whether I am part of the Settlement?

THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY ...................PAGE 4
    8. What does the Settlement provide?

HOW TO GET BENEFITS FROM THE SETTLEMENT ..................................PAGE 4
    9.  How do I submit a claim for the cash payment benefit?
    10. What am I giving up to receive Settlement benefits or stay in the Settlement Class?
    11. What are the Released Claims?
    12. What happens if my contact information changes after I submit a claim?
    13. When will I receive my Settlement Benefits?

THE LAWYERS REPRESENTING YOU ......................................................PAGE 5
    14. Do I have a lawyer in this case?
    15. How will Class Counsel be paid?

OPTING OUT OF THE SETTLEMENT ........................................................PAGE 6
    16. How do I get out of the Settlement?
    17. If I opt out, can I get anything from the Settlement?
    18. If I do not opt out, can I sue the Defendant for the same thing later?

OBJECTING TO THE SETTLEMENT ........................................................PAGE 6
    19 How do I tell the Court that I do not like the Settlement?
    20. What is the difference between objecting and asking to opt out?

THE FINAL APPROVAL HEARING............................................................PAGE 7
    21. When and where will the Court decide whether to approve the Settlement?
    22. Do I have to attend the Final Approval Hearing?
    23. May I speak at the Final Approval Hearing?

IF YOU DO NOTHING .............................................................................PAGE 8
    24. What happens if I do nothing at all?

GETTING MORE INFORMATION.............................................................PAGE 8
    25. How do I get more information?

**Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx**

2

# BASIC INFORMATION

### 1. Why is this Notice being provided?

A federal court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable M. James Lorenz of the United States District Court for the Southern District of California is overseeing this class action. The case is known as *Deats v. The Zalkin Law Firm, P.C.*, Case No. 3:23-cv-02005-L-SBC (the "Litigation"). The person who filed this lawsuit is referred to here as the "Plaintiff" or "Class Representative," and the entity sued, The Zalkin Law Firm, P.C., is referred to here as "Zalkin" or the "Defendant."

### 2. What is this lawsuit about?

The Litigation alleges that, on or around April 2023, Zalkin was the victim of a data incident whereby an unauthorized person gained access to Zalkin's network. The data allegedly accessed may have included Plaintiff's and/or Settlement Class Members' personally identifiable information (PII) or protected health information (PHI).

Zalkin denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing or that any law has been violated. Zalkin denies these and all other claims made in the Litigation. By entering into the Settlement, Zalkin is not admitting any wrongdoing.

### 3. Why is the lawsuit a class action?

In a class action, Class Representatives sue on behalf of all people who have similar claims. Together, in the context of a settlement like this one, these people are called a Settlement Class or Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those Settlement Class Members who timely exclude themselves (opt-out) from the Settlement Class.

The Class Representative in this case is Ariana Deats.

### 4. Why is there a Settlement?

Plaintiff and the Defendant do not agree about the claims made in this Litigation. The Litigation has not gone to trial, and the Court has not decided in favor of the Plaintiff or the Defendant. Instead, Plaintiff and the Defendant have agreed to settle the Litigation. Plaintiff and the attorneys for the Settlement Class ("Class Counsel") believe the Settlement is best for all Settlement Class Members because of the Settlement Benefits made available under the Settlement, because of the risks and uncertainty associated with continued litigation, and because of the nature of the defenses raised by the Defendant.

# WHO IS INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am part of the Settlement?

You are a Settlement Class Member if your personal information was alleged to have been compromised in the Incident. Zalkin previously mailed notice of the Incident to Settlement Class Members, and notice of this

**Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx**

3

Settlement was sent to Settlement Class Members. If you are not sure whether you are a Settlement Class Member, you may contact the Settlement Administrator at 1-XXX-XXX-XXXX.

**6.  Are there exceptions to being included in the Settlement?**

Yes. Excluded from the Settlement Class are Defendant and its managing agents and representatives, the judge presiding over the Litigation and members of their immediate family, and Class Members who submit a Request for Exclusion.

**7.  What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Settlement Class Member, you may go to the settlement website at www.Zalkinsettlement.com or call the Settlement Administrator's toll-free number at 1-xxx-xxx-xxx.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8.  What does the Settlement provide?**

Zalkin has agreed to pay $285,000.00 (the "Settlement Fund") to settle this Litigation. The Settlement Fund will be used to pay benefits to the Settlement Class Members who file valid and timely claims, the costs of notice and claims administration, attorneys' fees and costs and a service award to the Plaintiff. If you are a Settlement Class Member, you may be able to receive a cash payment by completing a claim form, located at www.Zalkinsettlement.com. By submitting a valid claim using the claim form, you are eligible to receive a cash payment (prorated depending upon how many Settlement Class Members file valid claims).

## HOW TO GET BENEFITS FROM THE SETTLEMENT

**9.  How do I submit a claim for the cash payment benefit?**

Settlement Class Members seeking the cash payment benefit must submit a valid claim form to the Settlement Administrator by **Month Day, 2024**. You will need your Unique ID to file a claim form online. Your Unique ID can be found on the notice mailed/emailed to you. If you did not receive a notice but believe you are a Settlement Class Member, or if you no longer have your Unique ID, contact the Settlement Administrator at 1-xxx-xxxx.

Claim forms can be submitted online at www.Zalkinsettlement.com or by mail. If by mail, the claim form must be **postmarked** by **Month Day, 2024**. The quickest way to submit a claim is online. Claim Forms are also available by calling 1-xxx-xxx-xxx or by writing to:

Zalkin Settlement Administrator
PO Box xxxx
xxxxx, xx xxxx-xxxx

**10.  What am I giving up to receive Settlement benefits or stay in the Settlement Class?**

Unless you exclude yourself (opt-out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Defendant and Released Parties about the legal issues

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

4

in this Litigation that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

## 11.  What are the Released Claims?

The Settlement Agreement describes the Released Claims, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.Zalkinsettlement.com or in the public Court records on file in this Lawsuit. For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the lawyers listed in Question 14 (below) for free, or you can talk to your own lawyer at your own expense.

## 12.  What happens if my contact information changes after I submit a claim?

If you change your mailing address or email address after you submit a claim form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-xxx-xxx-xxxx, by emailing XXX@XXXXX.com, or by writing to:

Zalkin Settlement Administrator

PO Box xxxx

xxxx, xx xxxxx-xxxx

## 13.  When will I receive my Settlement Benefits?

If you file a timely and valid claim form, payment will be provided by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.Zalkinsettlement.com for updates.

# THE LAWYERS REPRESENTING YOU

## 14.  Do I have a lawyer in this case?

Yes, the Court has appointed Scott Edward Cole of Cole & Van Note, 555 12th Street, Ste. 2100, Oakland, CA 94607; (510) 891-9800 as Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Litigation.

## 15.  How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees of $99,750.00, plus reasonable litigation costs and expenses to Class Counsel. They will also ask the Court to approve a Service Award of $3,500 to the Plaintiff for participating in this Litigation and for her efforts in achieving the Settlement. If awarded by the Court, attorneys' fees and costs and the Service Awards will be paid out of the Settlement Fund. The Court may award less than these amounts.

Class Counsel's application for attorneys' fees, costs, and service award will be made available on the settlement website at before the deadline for submission of objections.

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

5

## OPTING OUT OF THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue the Defendant on your own based on the claims raised in this Litigation or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from or "opting-out" of the Settlement.

| 16. How do I get out of the Settlement? |
|---|

To opt-out of the Settlement, you must mail a written notice of intent to opt-out. The written notice must be signed by you and include your name and address, and clearly state that you wish to be excluded from the Settlement Class.

The opt-out request must be **postmarked** and sent to the Settlement Administrator at the following address by **Month Day, 2024**:

Zalkin Settlement Administrator
Exclusions
PO Box xxxx
xxxxx, xx xxxxx-xxxx

You cannot exclude yourself by telephone or by email.

| 17.  If I opt out, can I get anything from the Settlement? |
|---|

No. If you opt out, you are telling the Court you do not want to be part of the Settlement. You can only get Settlement benefits if you stay in the Settlement. If you opt out, do not submit a claim form.

| 18.  If I do not opt out, can I sue the Defendant for the same thing later? |
|---|

No. Unless you opt-out, you give up any right to sue the Defendant and Released Parties (which includes Zalkin, and its parents, subsidiaries, predecessors, successors, divisions, joint ventures, affiliates and related entities and all of their respective past and present directors, officers, employees, partners, principals, agents, attorneys, insurers, reinsurers, assigns, and related or affiliated entities) for the claims this Settlement resolves and releases relating to Incident. You must opt-out of this Litigation to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

| 19.  How do I tell the Court that I do not like the Settlement? |
|---|

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement or requested attorneys' fees, costs, and service awards. You can also give reasons why you think the Court should not approve the Settlement or attorneys' fees, costs, and service awards. To object, you must mail timely written notice as provided below no later than **Month Day, 2024**, stating you object to the Settlement. The objection must include all the following additional information:

1) Your full name, current address, current telephone number;
2) The case name and number — *Deats v. The Zalkin Law Firm, P.C.*, Case No. 3:23-cv-02005-L-SBC (United States District Court, Southern District of California).

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

6

3)  Information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class (e.g., copy of your postcard notice, copy of the original notice of the Incident, or a statement explaining why you believe you are a Settlement Class Member);

4)  A written statement of the position you wish to assert, including the legal and factual grounds for the position;

5)  Copies of any other documents you wish to submit in support of your position;

6)  The identity of any and all counsel representing you in connection with the objection;

7)  A statement whether you or your counsel will appear at the Final Approval Hearing; and

8)  Your signature or the signature of your duly authorized attorney or other duly authorized representative (if any) representing you in connection with the objection.

To be timely, written notice of an objection in the appropriate form must be mailed, postmarked no later than **Month DD, 2024,** to the Settlement Administrator at the following address:

Zalkin Settlement Administrator

PO Box xxxx

XXXXXX, XX XXXX-XXXX

Any Settlement Class Member who fails to comply with the requirements for objecting in Section VIII of the Settlement Agreement waives and forfeits any and all rights they may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the litigation.

| 20.  What is the difference between objecting and asking to opt out? |
| --- |

Objecting is simply telling the Court you do not like something about the Settlement or requested attorneys' fees, costs, and service award. You can object only if you stay in the Settlement Class (meaning you do not opt-out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt-out, you cannot object to the Settlement.

# THE FINAL APPROVAL HEARING

| 21.  When and where will the Court decide whether to approve the Settlement? |
| --- |

The Court will hold a Final Approval Hearing on **Month Day, 2024, at X:XX a/p.m.** before Judge M. James Lorenz at Edward J. Schwartz, United States Courthouse, 221 West Broadway, San Diego, California 92101, Courtroom 5B.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's application for attorneys' fees, costs and expenses, and the service awards to the Plaintiff. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

<u>Note</u>: The date and time of the Final Approval Hearing are subject to change. Any change will be posted on the settlement website.

| 22.  Do I have to attend to the Final Approval Hearing? |
| --- |

**Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx**

7

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to speak about it. As long as you mail your written objection on time, the Court will consider it.

**23. May I speak at the Final Approval Hearing?**

Yes, as long as you do not exclude yourself (opt-out), you can (but do not have to) participate and speak for yourself in this Litigation and Settlement. This is called making an "appearance." You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Section 19 (above) and specifically include a statement whether you and your counsel (if any) will appear at the Final Approval Hearing.

# IF YOU DO NOTHING

**24. What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing (including not filing a claim), you will not receive any Settlement Benefits. You will also give up rights explained in the "Opting Out of the Settlement" section of this Notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendant or any of the Released Parties about the legal issues in this Litigation that are released by the Settlement Agreement relating to the Incident.

# GETTING MORE INFORMATION

**25. How do I get more information?**

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.Zalkinsettlement.com, by calling 1-xxx-xxx-xxxx or by writing to:

Zalkin Settlement Administrator
PO Box xxxx
XXXXX, XX XXXXX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR ITS
CLERK'S OFFICE REGARDING THIS NOTICE.**

Questions? Go to www.Zalkinsettlement.com or call 1-xxx-xxx-xxxx

8

# Exhibit D



555 12th Street, Suite 2100
Oakland, California 94607
Tel: (510) 891-9800
www.colevannote.com

**C O L E  &  V A N  N O T E**
ATTORNEYS AT LAW

# Firm Resume

Cole & Van Note ("CVN") is a boutique class action firm known for aggressive representation and impressive results in the areas of consumer fraud, data breach, environmental and employment litigation. Founded in 1992, CVN has been devoted primarily to such matters, having litigated hundreds of class actions against businesses of all types and in every industry imaginable. The members of CVN have vast experience prosecuting class/complex actions, both in a sole counsel capacity and in leadership positions, oftentimes among many firms, in California and nationwide litigation. They have published numerous scholarly articles dealing with various substantive issues as well as class action litigation/procedure, speak regularly at public events and/or to legal audiences, and have served as consulting experts in class action litigation. The firm has helped recover billions of dollars for tens of millions of workers and consumers, been involved in record-setting settlements and judgments and achieved the correction of numerous unlawful practices.

SHAREHOLDERS/ASSOCIATES:

<u>Scott Edward Cole</u>, founder/shareholder, graduated from the University of San Francisco School of Law, practices in all California courts and has extensive leadership experience prosecuting cases in federal and state courts nationwide. Mr. Cole has authored numerous scholarly publications and serves as highly regarded guest lecturer on issues surrounding class action procedures and negotiation theory. Mr. Cole has been responsible for shaping the law in trial and appellate courts for decades, authored the book "Fallout" and is available to serve as a mediator of class action disputes.

Credentials: Admitted, California State Bar, December 1992; University of San Francisco School of Law, J.D., 1992; President, University of San Francisco Labor & Employment Law Society; San Francisco State University, B.A., Speech Communications (Individual Major in Rhetoric), 1989, Minor Study in Business Administration, 1989; Admitted, United States District Court for all California Districts and in numerous additional states; Admitted, United States Court of Appeals (6th and 9th Circuits). Additionally, Mr. Cole is a former National Association of Securities Dealers Registered Representative (Series 7) and is/has been a member of the Association of Trial Lawyers of America, California Employment Lawyers Association, American Bar Association,

Alameda County Bar Association (e.g., Vice Chair of ACBA's Labor & Employment Law Section Executive Committee), National Employment Lawyers Association and a U.S. Delegate to the InterAmerican Meeting of Labor and Trade Union Lawyers, Havana, Cuba (March 2012). Mr. Cole is also the author of "Fallout," a story based upon his experiences litigating after the 1994 airborne release of toxic chemicals by the Unocal Corporation (also used by various law schools in the curriculum for first year law students).

Laura Van Note, shareholder, is an aggressive and skilled advocate and leads the firm's hiring and career outreach efforts. A 2013 graduate of the University of Missouri, Kansas City School of Law, her practice has focused primarily on class action representation of data breach victims and in employment/civil rights litigation. With a near-perfect track record for results, Ms. Van Note appears in all California courts, is also licensed in Missouri and Kansas and maintains various professional affiliations.

Credentials: Member, State Bar of California (Admitted 2016), State Bar of Missouri (Admitted 2013), State Bar of Kansas (Admitted 2015); Admitted, Federal District Courts in California, Missouri, and Kansas. University of Missouri, Kansas City School of Law (2013, Order of the Barrister, Dean's List), Captain of the National Trial Advocacy Team, President of the American Constitutional Society for Law and Policy, Teaching Assistant to the Directory of Advocacy; Graduate, University of Missouri, Kansas City (Bachelor of Arts in History, Minor in French);

Elizabeth Ruth Klos, associate attorney, graduated from the University of Southern California Gould School of Law with a merit scholarship in 2022. During law school, Ms. Klos worked as a research assistant for the USC Law Library, while also achieving honors grades in courses such as Contracts, Labor Law, Torts, Mediation and Constitutional Law. Ms. Klos developed her passion for litigation through diverse experiences at the Hillsborough County Public Defender's office, a boutique family law practice in Los Angeles, and clerking under Judge Valerie Salkin at the Los Angeles Superior Court. At CVN, Ms. Klos utilizes her litigation experience in the areas of class action, consumer and data breach law.

Credentials: Admitted, California State Bar, December 2022; University of Southern California Gould School of Law, J.D., 2022; New College of Florida, B.A. in Liberal Arts (dual Area of Concentration in Political Science and History), 2016.

Margo Amelia Crawford, associate attorney, graduated from McGill University, Faculty of Law in Montréal, Canada with a joint J.D. and B.C.L. in 2020. Margo served as Vice President of the McGill Business Law Association, and as Editor and Vice President of Contours, a feminist law journal. At McGill, Margo focused her study on privacy and intellectual property. During law school Margo worked as a Pro Bono student for the Canadian Civil Liberties Association and a legal intern for the Samuelson-Glushko Canadian Internet Policy and Public Interest Clinic. Margo undertook independent research projects in comparative US-Canada trademark law, and Indigenous intellectual property rights. In 2022, Margo received an LL.M. from UC Law SF (formerly UC Hastings), where her studies focused on US trademark law. As an Associate at CVN, Margo uses

her unique experiences and educational background to bring new and analytical perspectives to consumer and data breach litigation.

Credentials: Admitted, California State Bar, May 2023; McGill University Faculty of Law, J.D. and B.C.L., 2020; The University of California College of the Law, San Francisco (formerly UC Hastings), LL.M., 2022; Brown University, A.B. (English Literature), 2016.

<u>William Vollbrecht</u>, associate attorney, graduated from the University of California, Davis School of Law (King Hall) with a merit scholarship in 2020. During law school he worked as a clerk at a boutique labor law practice and also clerked under Judge Mike Nakagawa at the United States Bankruptcy Court, District of Nevada. Prior to joining CVN, Wil practiced in wide range of areas, primarily focusing on labor disputes and civil rights claims. At CVN, Wil uses his litigation experience in the areas of class action, consumer, and data breach law.

Credentials: Admitted, California State Bar, May 2021; University of California, Davis school of Law, J.D., 2020; University of Missouri, Columbia, B.A. in Psychology and Sociology, 2017.

**CVN SCHOLARLY PUBLICATIONS (*Partial List Only*):**

Scott Edward Cole & Matthew Roland Bainer, *The Quest for Class Certification*, Employment Law Strategist (Sept. & Oct. 2003).

Scott Edward Cole & Matthew Roland Bainer, *To Be or Not to Be a Penalty: Defining the Recovery Under California's Meal and Rest Period Provisions*, Golden Gate U. L. Rev. (Spring 2005).

Scott Edward Cole & Matthew Roland Bainer, *To Certify or Not to Certify: A Circuit-By-Circuit Primer of the Varying Standards for Class Certification in Actions under the Federal Labors Standards Act*, B.U. Pub. Int. L.J. (Spring 2004).

Scott Edward Cole, *Kullar v. Footlocker Retail, Inc.: A New Standard for Class Action Settlement Approval*, CELA Bulletin (April 2009).

Matthew Roland Bainer, *Ninth Circuit Provides Much Needed Guidance on Evidentiary Burdens in Overtime Misclassification Litigation,* CELA Bulletin (May 2009).

Kevin Robert Allen, *Putting the "Rest" Back in Rest Break,* Alameda County Bar Association - Labor & Employment Section News (Autumn 2009).

Michael Scott Lubofsky, *Barristers to Blogs: Softening Ethical Restrictions in the Digital Age,* Los Angeles Daily Journal (June 14, 2010).

**REPRESENTATIVE CLASS ACTION AND COMPLEX CASES (*Partial List Only*):**

Our firm has represented, directly or indirectly, millions of individuals in thousands of legal disputes, including several hundred class actions and/or complex litigation cases. For three decades, the firm has amassed extensive experience litigating data breach, wage and hour, environmental, and other personal injury and commercial cases. Today, the firm almost exclusively prosecutes multi-state data breach class actions. Drawing from various areas of law, examples of the range of our practice include:

Augustus/Davis v. ABM Security Services, Inc (aka American Comm. Security Service, Inc. Superior Court of California, County of Los Angeles, Case No. BC336416
Our firm filed this action for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009. Following summary judgment proceedings, a judgment of over $89 million was entered against the defendant(s). The judgment hinged on the issue of whether "on-duty" rest breaks were legally sufficient. After the Court of Appeal ruled against Plaintiffs on the issue, the case went to the California Supreme Court where Plaintiffs prevailed and, in so doing, created a new legal standard clarifying that "on-duty" rest breaks are invalid. After 12 years of litigation, a judgment and substantial appellate work, this matter resolved for $110 million.

Bower, et al. v. Steel River Systems LLC
Illinois Fourteenth Judicial Circuit Court (Whiteside County), Case No. 2023-LA-000006
This action arose out of Steel River Systems' 2022 data breach which affected numerous consumers and/or employees. This action has settled.

Bulow, et al. v. Wells Fargo Investments, LLC
United States District Court, Northern District of California, Case No. 3:06-CV-7924
This matter was filed as a nation-wide class action against Wells Fargo Investments, on behalf of its Financial Consultants to recover overtime pay, compensation for denied meal and rest periods (California only) and reimbursement for business related service and supply expenses (California only). This matter settled for $6.9 million.

Cano, et al. v. United Parcel Service, Inc.
Superior Court of California, County of Alameda, Case No. RG03089266
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt Operations Management Specialists, Operational Excellence Specialists and/or Industrial Engineering Specialist at this company's California facilities. This action settled in 2004 for $4.5 million.

Chaidez, et al. v. Odwalla, Inc.
Superior Court of California, County of San Mateo, Case No. CIV430598

This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt California Route Sales Representatives. CVN served as primary counsel for this proposed class of employees. This action settled for $2.2 million.

CKE Overtime Cases
Superior Court of California, County of Los Angeles, Case No. BC283274 (JCCP No. 4274)
This class action was brought against fast food chain Carl's Jr. for violations of California's overtime laws on behalf of the company's California restaurant chain Managers. The coordinated litigation settled for up to $9.0 million in 2004.

Davis, et al. v. Universal Protection Security Systems, Inc., et al.
Superior Court of California, County of San Francisco, Case No. CGC-09-495528
Our firm filed a claim in 2009 against Universal Protection Security Systems, Inc. for violations of California law for denial of meal and rest periods toward security guards. This case settled in 2013 for $4 million.

Despres (Cornn), et al. v. United Parcel Service, Inc.
United States District Court, Northern District of California, Case No. 3:03-CV-02001
This wage and hour class action litigation was brought to remedy violations of meal and rest period regulations on behalf of the company's California ground delivery drivers. CVN served as co-counsel for the certified class of drivers. This action settled for $87 million, an unprecedented settlement amount for such claims.

Escow-Fulton, et al. v. Sports and Fitness Clubs of America dba 24 Hour Fitness USA, Inc.
Superior Court of California, County of San Diego County, Case Nos. GIC881669/GIC873193
Our firm filed this class action on behalf of the company's California "Group X" Instructors to recover regular and overtime pay, related penalties and un-reimbursed expenses. The action achieved class certification status in 2009. In 2011, the parties agreed to settle the expense reimbursement claims for $10 million. The parties then filed cross-motions for summary adjudication and on August 2, 2011, the court issued an Order finding 24 Hour Fitness' session rate compensation scheme to be an invalid piece rate. The parties then agreed to settle the unpaid wage claims for another $9 million, and the summary adjudication order was vacated pursuant to settlement.

Fedorys, et al. v. Ethos Group, Inc.
United States District Court, Northern District of Texas, Case No. 3:22-cv-02573-M
This action arose out of Ethos Group's 2022 data breach which affected at least 267,000 consumers. Cole & Van Note was appointed co-lead class counsel.

Hakeem v. Universal Protection Service, LP
Superior Court of California, County of Sacramento, Case Nos. 34-2020-00286228-CU-OE-GDS; 34-201900270901-CU-OE-GDS

After an exhaustive multi-year process including venue transfer, consolidation, migration of litigants from one case to the other, multiple appeals and hard-fought litigation, these security guards class actions achieved a consolidated judgment for $10 million.

Henderson, et al. v. Reventics, LLC
United States District Court, District of Colorado, Case No. 1:23-cv-00586-MEH
This action arose out of Reventics' massive 2022 data breach which affected, potentially, millions of patients, consumers and/or employees. Cole & Van Note was appointed co- lead class counsel.

Hinds v. Community Medical Centers
United States District Court, Eastern District of California, Case No. 2:22-cv-01207-JAM-AC
This action arose out of Community Medical Centers' massive data breach in 2021 which affected countless patients, consumers and/or employees. After reviewing competing requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead counsel position.

In Re Walgreen Co. Wage and Hour Litigation
United States District Court, Central District of California, Case No. 2:11-CV-07664
Our firm served as court-appointed Lead Counsel after an adversarial hearing process in this consolidated action of nine lawsuits bringing a variety of wage and hour claims on behalf of California workers. The case settled for $23 million.

In Re: Apple Inc. Device Performance Litigation
United States District Court, Northern District of California, Case No. 5:18-md-02827-EJD
Following Apple's December 2017 admission that it throttled back performance of its iPhones (versions 6, 6 Plus, 6s, 6s Plus, SE, 7, and 7 Plus) to mask the problem of defective batteries and unexpected iPhone shut-downs, Cole & Van Note filed a class action to recover damages for consumers nationwide. This action settled for $500 million. Cole & Van Note served on the Plaintiffs' Steering Committee.

In Re: Rackspace Security Litigation
United States District Court, Western District of Texas, Case No. SA-22-cv-01296
This action arises out of Rackspace Technology's 2022 massive ransomware event which shut down functionality for tens of thousands of individuals and businesses across the Unites States and overseas. Cole & Van Note serves as court-appointed lead counsel for the nationwide class and representative plaintiffs from over 30 states.

In Re Tosco SFR Litigation
Superior Court of California, County of Contra Costa, Case No. C97-01637
During incidents on April 16, 1997, and January 7, 1998, the Tosco Refinery in Rodeo, California released airborne toxic chemicals. These harmful substances traveled into neighboring communities, seriously affecting the health of citizens and local workers. CVN served as Lead

Counsel in this complex litigation and represented thousands of members of the community in that role. CVN settled this matter for $2.5 million, the funds from which were disbursed to over 2,000 claimants who participated in the settlement.

In Re Unocal Refinery Litigation
Superior Court of California, County of Contra Costa, Case No. C94-04141
In response to Unocal's 16-day airborne release of chemicals over the County of Contra Costa in 1994, CVN filed a class action against the corporation on behalf of thousands of victims and thereafter served as one of a handful of firms (among dozens of law firms of record) on the Plaintiffs' Steering Committee. After hard-fought litigation, the matter eventually settled for $80 million. This case is the context for Mr. Cole's book "Fallout," published in 2018 (2605 Media LLC).

In Re Westley Tire Fire Litigation
Superior Court of California, County of Santa Clara, Case No. CV 801282
On September 22, 1999, lightning struck and ignited a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. Over the subsequent five weeks, the fire spewed smoke and carcinogens over a large portion of the State of California. CVN served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in the consolidated actions against the owners and operators of this tire pile and related entities. These cases sought compensation for those individuals and businesses suffering personal and/or property damages as a result of these toxic substances and the fire's fall-out. In 2001, CVN reached a settlement with one defendant (CMS Generation Co.) for $9 million. In 2003, the Court granted final approval of the settlement. In 2005, two of the remaining defendants settled for roughly $1.4 million (over $10 million aggregate).

Kowarsky v. American Family Life Insurance Company
U.S.D.C. Western District of Wisconsin, Case No. 3:22-cv-00377
This case involves a data breach in which a flaw in the Defendant's website allowed cybercriminals to obtain driver's license numbers, at least some of which were subsequently used to fraudulently apply for government benefits.

Kullar v. Foot Locker, Inc.
Superior Court of California, County of San Francisco, Case No. CGC-05-447044
This action was brought on behalf of California employees allegedly forced to purchase shoes of a distinctive color or design as a term and condition of their employment and in violation of state law. After the Court approved a multi-million settlement, two separate appeals challenged the settlement, but the Court of Appeal affirmed the trial court's judgment. This case has now established in California what's known as the "*Kullar standard*" for court approval of class action settlements.

Lett v. TTEC
U.S.D.C. Northern District of California, Case No. 3:22-cv-00018
This action arose out of TTEC Service Corporation's massive data breach in 2021 which affected countless patients, consumers and employees. CVN helped negotiate a $2.5 million maximum settlement for the class of victims.

Mambuki, et al. v. Securitas Security Services USA, Inc.
Superior Court of California, County of Santa Clara, Case No. 1-05-CV-047499 (JCCP No. 4460)  Our firm filed a claim against this defendant for violations of California law (for denial of meal and rest periods) on behalf of the company's California-based security guards. This coordinated proceeding settled in 2008 for $15 million.

Mendoza v. CaptureRx
United States District Court, Western District of Texas, Case No. 5:21-CV-00523-OLG
This class action against NEC Networks, LLC, d/b/a CaptureRx ("CaptureRx"), as well as Rite Aid and Community Health Centers of the Central Coast arising out of the massive data breach in 2021 which affected a minimum of 1.6 million people. The hacked information included sensitive personally identifiable information and personal health information. These consolidated cases settled in 2022 for a total value of at least $4.75 million.

O'Brien v. Edward D. Jones & Co., LP.
United States District Court, Northern District of Ohio, Case No. 1:08-CV-00529
We filed a nation-wide (and New York State) class action against this financial securities company on behalf of the company's financial services representatives to recover overtime pay and related penalties. CVN served on a Lead Counsel Committee in this action, which settled in 2007 for $19 million.

Onyeige, et al. v. Union Telecard Alliance, LLC
U.S.D.C. Northern District of California, Case No. 3:05-CV-03971; MDL No. 1550
Our firm filed an action against Union Telecard Alliance, LLC alleging negligent misrepresentation and deceptive advertising practices related to its marketing of pre- paid telephone calling cards. This action settled for $22 million.

John Prutsman, et al. v. Nonstop Administration and Insurance Services, Inc.
United States District Court, Northern District of California, Case No. 3:23-cv-01131-VC
This action arose out of Nonstop's massive 2022 data breach which affecting consumers, employees and health care affiliates. Cole & Van Note was appointed co-lead class counsel.

Ramirez, et al. v. The Coca Cola Company, et al.
Superior Court of California, County of San Bernardino, Case No. RCV 056388 (JCCP No. 4280)
This is one of two companion actions CVN prosecuted against this soft drink giant for violations of California's overtime laws. This action was brought on behalf of over 4,000 hourly workers at the company's bottling, distribution and sales centers who were allegedly forced to work "off-the-clock" for Coca Cola and/or whose time records were ordered modified by the company.

This well-publicized action settled for $12 million and on very favorable terms for the claimants. CVN filed the first action on these issues and ultimately worked with co-counsel for the proposed class of workers.

Riordan, et al. v. Western Digital Corp.
U.S.D.C. Northern District of California, Case No. 5:21-CV-06074
This action arose out of the well-publicized widespread criminal data deletion of consumer hard drives in 2021. According to the lawsuit, the company knew of vulnerabilities in, at least, six of its products for years which ultimately led to the erasure of data for countless purchasers of these products. CVN serves as sole counsel for the victims.

Roman, et al. v. HanesBrands, Inc.
United States District Court, Central District of California, Case No. 5:22-cv-01770
This case involves a data breach of HanesBrands' network system in which personal health information was accessed and/or reviewed by cybercriminals.

Thomas, et al. v. Cal. State Auto. Assoc., et al.
Superior Court of California, County of Alameda, Case No. CH217752
Our firm filed this class action litigation on behalf of all California claims adjusters working for CSAA after mid-January 1997. This lawsuit alleged that, during those years, CSAA mis- classified these workers as exempt "administrators" and refused to pay them for overtime hours worked. This lawsuit settled for $8 million. CVN commenced this action and served as co-counsel for the nearly 1,200 claims representatives.

Tierno v. Rite Aid Corporation
United States District Court, Northern District of California, Case No. 3:05-CV-02520
Our firm filed this action against Rite Aid Corporation on behalf of its salaried California Store Managers. It was alleged that defendant, purportedly the nation's third largest drug store chain, failed to pay overtime to those workers and denied them their meal and rest periods. In 2006, the federal court certified the class in this action, and approved a $6.9 million non-reversionary settlement in 2009.

Tsvetanova v. Regents of the University of California, d/b/a U.C. San Diego Health Superior Court of California, County of San Diego, Case No. 37-2021-00039888-CU-PO-CTL
This action arises out of U.C. San Diego Health's massive data breach between December 2020 and April 2021 which affected countless patients, consumers and employees. After reviewing numerous requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead class counsel position.

Ward v. Anderson McFarland & Conners LLC
Superior Court of California, County of Los Angeles, Case No. 20CV00611
Our firm filed this case in connection with a data breach that affected the information the firm's clients, adversarial parties, etc. This action has settled.

Witriol, et al. v. LexisNexis., et al.
U.S.D.C., Southern District of California, Case No. 3:06-CV-02360
Our firm filed an action against this company for its unlawful disclosure of private credit, financial and/or other personal information. This action settled for up to $2.8 million.

Zucchero v. Heirloom Roses, Inc.
U.S.D.C. Northern District of California, Case No. 4:22-cv-00068
CVN filed this case in connection with a 2021 data breach that hacked the information of the company's mostly online customers. This action has resolved.

NOTABLE APPELLATE EXPERIENCE:

CVN has substantial appellate experience, highlighted by the examples below. For other appellate and/or unreported opinions, please contact our firm.

Augustus, et al. v. ABM Security Services, Inc. (2016) 2 Cal.5th 257 (Case No. S224853)

Baddie v. Berkeley Farms, Inc. (9th Cir. 1995) 64 F.3d 487 (Case No. 93-17187)

Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422 (First Dist., Division 1, Case No., A111153)

In Re Certified Tired and Service Centers Wage and Hour Cases (Cal. Supreme Ct. Case No. S252517)

Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116 (Case No. A119697)

Montano v. The Wet Seal Retail, Inc. (2015) Not Reported in Cal.App.4th (2015 Cal. App. LEXIS 1199, Second District, Division 4, Case No. B244107)

O'Hara v. Factory 2-U Stores, Inc. (2003) Not Reported in Cal.Rptr.3d, 2003 WL 22451991 (First District, Division 4, Case No. A101452)

Taylor v. Park Place Asset Management, et al. (1999) (First Dist., Division 5, Case No. A086407)

Whiteway v. Fedex Kinko's Office and Print Services (9th Cir. 2009) 319 Fed.Appx. 688 (Case No. 07-16696)

CONTACT INFORMATION:

Cole & Van Note
555 12th Street, Suite 2100, Oakland, CA 94607
(510) 891-9800; www.colevannote.com