UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIANA DEATS,<br><br>  Plaintiff,<br><br>v.<br><br>THE ZALKIN LAW FIRM, P.C.,<br><br>  Defendant. | Case No.: 23cv2005-L-SBC<br><br>**ORDER DENYING PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[ECF NO. 11]** |

Pending before the Court in this putative class action alleging damages arising from a data breach is Plaintiff's unopposed motion for preliminary approval of class action settlement. (ECF Nos. 11 ("Mot."), 12.) Plaintiff Ariana Deats and Defendant The Zalkin Law Firm, P.C. have agreed to settle this action upon the terms set forth in the Class Action Settlement Agreement and Release ("Settlement"), which is attached as Exhibit A to the Declaration of Scott E. Cole in support of the motion (ECF no. 11-1 ("Cole Decl.")). In support of the Motion, Plaintiff also filed the proposed Notice of Settlement and Claim Form (Cole Decl. Exs. D & C, respectively), as well as the proposed Settlement Administrator's declaration (ECF No. 11-2 ("Green Decl.")). The

/ / / / /

1  Court decides the matter on the papers submitted without oral argument.  *See* Civ. L. R.
2  7.1(d.1).  For the reasons stated below, the motion is denied.[1]

3  In her operative complaint (ECF no. 1-2 ("Compl."), Plaintiff alleges that
4  Defendant was a law firm specializing in representing victims of sexual abuse and
5  harassment, discrimination, and personal injury.  Plaintiff is Defendant's former client.
6  As required to obtain Defendant's services, Plaintiff provided Defendant with highly
7  sensitive health and personally identifiable information relating to her case as a sexual
8  abuse victim.

9  On April 4, 2023, a known cybercriminal group specializing in ransomware
10 infiltrated Defendant's computer network and accessed client information including
11 driver's license and social security numbers, medical information, and highly sensitive
12 details from client case files concerning sexual abuse and harassment.  After the breach,
13 Plaintiff received an email from the cybercriminal group stating the group was in
14 possession of her case file.  The email included images of what appeared to be attorney
15 notes about her case detailing highly personal information.  Although Defendant learned
16 of the data breach on April 6, 2023, it did not start notifying its clients until September 6,
17 2023.  Defendant sent a Notice of Data Breach to 523 clients.

18 Plaintiff filed a complaint against Defendant on her own behalf and on behalf of
19 similarly situated individuals claiming negligence, breach of implied contract, breach of
20 the implied covenant of good faith and fair dealing, violation of California's Unfair
21 Competition Law, and unjust enrichment based on the contention that Defendant failed
22 adequately to protect sensitive client information.  Plaintiff sought damages and
23 injunctive relief.

24 The Complaint, originally filed in State court, was removed to this Court based on
25 diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. §§ 1441(a) and

---

[1]   Unless otherwise defined herein, the capitalized terms in this Order are defined in the Settlement.

1332(d)(2).  In its Notice of Removal, Defendant claimed that the maximum possible recovery for the Class after trial could reasonably exceed $5 million.  (ECF No. 1 ("Removal").)

Under the proposed Settlement, Defendant is to pay $285,000 as the Settlement Fund.  (Settlement § IV.)  From the Settlement Fund, the Settlement Administrator would deduct, as approved by the Court, $15,000 for settlement administration and Class Notice; Class Counsel's fees up to $99,750.00; litigation costs; and an Incentive Award of $3,500.  (*Id.*; *see also* Green Decl. Ex. B.)  The remaining balance would be divided equally among the Class Members who submitted valid Claim Forms.  (Settlement § IV.)  Plaintiff has provided no estimate of litigation costs she intends to request for reimbursement, although she appears to assume it would amount to $5,000.  (*See id.;* Mot. at 8.)  Assuming for the sake of argument that all requested amounts are approved in full and all 523 individuals who were sent Notice of Data Breach submit valid claims, each would receive approximately $309.  (*Cf.* Mot. at 8 ("around $300").)  No part of the Settlement Fund would revert to Defendant.  (Settlement §IV.)  The sum of any uncashed settlement checks would be paid to Child USA as *cy pres* recipient.  (*Id.* § V.)

To grant the pending motion and order dissemination of Class Notice, the Court must find that it

> will likely be able to
> (i)   approve the proposal under Rule 23(e)(2); and
> (ii)  certify the class for purposes of judgment on the proposal.

Fed. R. Civ. Proc. 23(e)(1)(B).

If, as here, the proposed settlement "would bind the class members, the court may approve it ... only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. Proc. 23(e)(2).  In making this determination for settlements occurring before class certification, as here, "[t]he district court must act as a fiduciary, protecting the interests of absent class members by scrutinizing the settlement's fairness in light of the well-
/ / / / /

established factors." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).[2] In this regard, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. Proc. 23(e)(2).

> In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors," viz., "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.
>
> However, consideration of these eight *Churchill* factors alone is not enough to survive appellate review. Rule 23(e)(2) also requires the court to consider the terms of any proposed award of attorney's fees and scrutinize the settlement for evidence of collusion or conflicts of interest before approving the settlement as fair.

*Kim*, 8 F.4th at 1178. As revised in 2018, Rule 23(e)(2) requires courts "to go beyond our precedent" by applying the heightened scrutiny set forth in *In re Bluetooth Headset*

---

[2] Unless otherwise noted, internal quotation marks, citations, brackets, and footnotes are omitted from citations.

*Prod. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011), to all class action settlements. *Briseno v. Henderson,* 998 F.3d 1014, 1024 (2021).

Based on this standard, the Court has a duty to look for any "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. One such subtle sign is "when the parties negotiate a 'clear sailing' arrangement[.]"

The Settlement here includes a "clear sailing" arrangement (Mot. at 4) whereby "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." *Bluetooth*, 654 F.3d at 940 n.6. This "carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Id*. at 947.

> [W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested.

*Id*. at 948.

With this procedural standard in mind, the Court first turns to the benefit the Settlement would provide the Class. Although Plaintiff asserts the Settlement "is an extraordinary result," (Cole Decl. ¶30 (emph. in orig.)), this opinion is not adequately supported.

Plaintiff provides only a cursory opinion of Class Members' potential recovery after trial and is vague in weighing of the strengths and weaknesses of Plaintiff's case. (*See* Mot. at 8-10.) Plaintiff's analysis is based almost entirely on prior settlements of data breach cases; however, the cases cited appear to involve only personally identifiable data. They are not analogous because, according to Plaintiff herself, her case involves "extraordinarily sensitive information." (Mot. at 10.) This is an apt description as her case involves medical information of sexual abuse and harassment victims in addition to personally identifiable information. Further, this highly sensitive information was

entrusted to the victims' attorney as protected by attorney-client and attorney work product privileges.  Finally, Defendant waited five months to notify its clients of the Data Breach thus compounding the damage.

Vaguely referring to the "novelty of the legal theories" involved (Mot. at 10) and the "infancy" of data breach litigation (Cole Decl. at 5), Plaintiff does not articulate how damages would be calculated if the Class prevailed at trial.  On the other hand, in its Removal, Defendant calculated that the maximum reasonable value of the case at trial would exceed $5 million.  (Removal at 4-5.)  A removing defendant must include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold of $5 million, which allegation is accepted unless contested.  *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  Plaintiff has not contested it on the issue of federal jurisdiction.  Instead, she proposed a $285,000 Settlement without explanation of the vast discrepancy in the value of the case.

While Defendant's Removal allegation is not binding on the parties, the unsubstantiated disparity between the Settlement and Defendant's removal allegations raises serious questions about settlement fairness.  Further serious questions are raised by the agreement, after informal investigation and without motion practice, not to oppose attorneys' fees of $99,750, representing 35% of what seems to be a meager Settlement Fund.

In addition, the Court notes that the proposed Class Notice contemplates notifying 523 individuals who were sent the Notice of Data Breach.  (Mot. at 15.)  As defined in the Settlement, the Class potentially encompasses a larger group, namely

> All individuals whose protected health information or personally identifiable information was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on or about April 6, 2023[, except for the o]fficers, directors, employees, and agents of Defendant who received a Notice of Data Breach letter[.]

(Settlement § II.B.)  The Settlement's release provision binds the same potentially larger group.  (*See id.* § IX.)  Given the scope of the Class Notice, the Court is not inclined to

approve a Settlement that potentially binds individuals who were not provided Class Notice.

Next, the Court cannot approve the Settlement's *cy pres* provision. The parties propose to distribute any uncashed settlement checks to Child USA as a *cy pres* recipient. (Settlement § V.F.)  The parties provide no explanation why this organization would be an appropriate for this class action.  In the absence of an explanation, Child USA appears to lack the close nexus required to ensure that the Class Members will ultimately benefit from the award.  *See Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012).  "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary." *Id.*  What is required is assurance that the funds will be "distributed in accordance with the goals of the remedy" and that class members will in fact benefit.  *Id.* (discussing and quoting *Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1309 (9th Cir. 1990)).

Based on the foregoing, Plaintiff's Motion Preliminary Approval of Class Action Settlement is denied.

**IT IS SO ORDERED.**

Dated:  April 8, 2024

_____
Hon. M. James Lorenz
United States District Judge