Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:   (510) 891-9800
Facsimile:   (510) 891-7030
Email: sec@colevannote.com
Email: lvn@colevannote.com

Attorneys for Representative Plaintiff
and the Plaintiff Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIANA DEATS, individually, and on behalf of all others similarly situated., <br><br> Plaintiff, <br><br> v. <br><br> THE ZALKIN LAW FIRM, P.C., <br><br> Defendant. | **Case No. 3:23-cv-2005-L-SBC** <br><br> CLASS ACTION <br><br> Hon. M. James Lorenz <br><br> **JOINT MOTION AND NOTICE OF MOTION FOR PRELIMINARY APPROVAL OF REVISED CLASS ACTION SETTLEMENT** <br><br> Action Filed: 9/25/2023 <br><br> **Date:       June 17, 2024** <br> **Time:       10:30 a.m.** <br> **Judge:      Hon. M. James Lorenz** <br> **Courtroom: 5B** <br><br> **Pursuant to Local Rules no oral argument unless requested by the Court.** |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on June 17, 2024 at 10:30 A.M., or as soon thereafter at the matter may be heard, before the Honorable M. James Lorenz, United States District Judge, Plaintiff Ariana Deats ("Plaintiff") and Defendant The Zalkin

Law Firm, P.C. ("Zalkin") will and do hereby jointly move this Court for an Order preliminarily approving the proposed Settlement entered into by Plaintiff and Defendant The Zalkin Law Firm, P.C. ("Zalkin" or "Defendant") (collectively, the "Parties").

This Motion is made pursuant to Federal Rules of Civil Procedure Rule 23(e) on the grounds that the proposed Settlement is within the range of reasonableness such that notice should be given when viewed against the continued risks of litigation. The proposed Settlement Class meets all criteria for certification for Settlement purposes and the proposed Notice and notice plan are designed to ensure the best practicable notice and compliance with due process.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Settlement Agreement and all exhibits thereto, the Declaration of Scott Edward Cole, Esq. in Support of the Joint Motion for Preliminary Approval of Settlement and all exhibits thereto, the Declaration of Julie Green of CPT Group, Inc., all other pleadings and papers on file, and such other arguments and materials as may be presented before the Motion is taken under submission.

Dated:   May 13, 2024          **COLE & VAN NOTE**

By:   /s/ Scott Edward Cole
Scott Edward Cole, Esq.
Laura Van Note
Attorneys for Plaintiff ARIANA
DEATS, and those similarly situated

**MANATT, PHELPS & PHILLIPS, LLP**

By:   /s/ Benjamin Strauss
Naeun Rim, Esq.
Brandon P. Reilly
Benjamin E. Strauss
Attorneys for Defendant
THE ZALKIN LAW FIRM, P.C.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................1

II.    SUMMARY OF THE LITIGATION .............................................2

       A.    Factual Allegations .............................................................2

       B.    Litigation History ...............................................................2

             1.    Litigation.....................................................................2

             2.    Initial Round of Negotiations .....................................3

             3.    Initial Motion for Preliminary Approval ...................4

             4.    Subsequent Round of Negotiations ............................4

III.   TERMS OF THE SETTLEMENT .................................................4

       A.    The Settlement Class...........................................................4

       B.    The Settlement Benefits ......................................................4

       C.    Notice, Notice Plan, and Claims Administration................6

       D.    The Settlement Administrator .............................................6

       E.    Attorneys' Fees, Costs, and Service Award .......................7

       F.    Released Claims ..................................................................7

IV.    LEGAL ARGUMENT .....................................................................8

       A.    The Revised Settlement Meets the Requirements for Preliminary Approval under Rule 23(e) ..............................8

             1.    Plaintiff and Class Counsel Adequately Represented the Class ...................................................10

             2.    The Settlement Resulted from Informed, Arm's-Length Negotiations of Experienced Counsel ...................11

             3.    The Relief Provided for the Class Is Significant When Considering the Risks of Continued Litigation.........12

                   a.    The Benefits of the Revised Settlement Are Superior or Comparable to Those That Have Been Approved in Other Cases .................................12

                   b.    The Settlement Is Justified In Light of the Risks, Expense, and Uncertainty of Ongoing Litigation. .........15

                   c.    CAFA Removal Is Not An Admission That Damages Would Exceed $5 Million On the Merits.......18

             4.    The Settlement Structure is Equitable .....................19

       B.    The Proposed Settlement Class Should be Certified .........20

             1.    The Settlement Class Satisfies Rule 23(a)...............21

             2.    The Settlement Class Satisfies Rule 23(b)(3)...........22

       C.    The Proposed Notice and Notice Program .......................24

             1.    The Notice Plan .........................................................24

JOINT MOTION FOR PRELIMINARY APPROVAL
CASE NO. 323-CV-2005-L-SBC

**TABLE OF CONTENTS**
(continued)

Page

    2.    The Proposed Notice Adequately Informs Class Members of Their Rights and Options ...................................................... 24

D.    Settlement Class Counsel Should be Appointed ............................... 25

E.    Proposed Schedule ............................................................................ 25

V.    CONCLUSION ........................................................................................ 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008) ............................................................................9

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591, 620 (1997) ............................................................................20, 23

*Briseno v. Henderson*,
  998 F.3d 1014  (2021) ................................................................................9, 10

*Campbell v. Facebook Inc.*,
  No. 13-cv-05996-PJH, 2017 WL 3581179, (N.D. Cal. Aug. 18, 2017) .............15

*Carter v. Vivendi Ticketing US LLC*,
  No. SACV 22-01981-CJC, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ..........14

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .......................................................................8

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021) .......................................................................20

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  No. 06-C-3903 TEH, 2008 WL 4667090, (N.D. Cal. Oct. 22, 2008) .................19

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014) .......................................................................................18

*Ebarle v. Lifelock, Inc.*,
  No. 15-cv-00258-HSG, 2016 WL 5076203 (N.D. Cal. Sept. 20, 2016) .............14

*Giroux v. Essex Property Trust, Inc.*,
  No. 16-cv-01722-HSG, 2019 WL 1207301 (N.D. Cal. Mar. 14, 2019) .............14

*Hammond v. The Bank of N.Y. Mellon Corp.*,
  2010 WL 2643307 (S.D.N.Y. June 25, 2010) ....................................................16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................................8, 9

*Harbour v. California Health & Wellness Plan*,
  No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ........13, 19

*Hashemi v. Bosley, Inc.*,
  No. CV 21-946 PSG (RAOX), 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ....14

1

## <u>TABLE OF AUTHORITIES</u>
(continued)

2

**Page(s)**

3

*Ibarra v. Manheim Invs., Inc.*,
   775 F.3d 1193 (9th Cir. 2015) ............................................................................18

4

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ...........................................................14, 20, 23

5

6

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935 (9th Cir. 2011) ......................................................................9, 10, 11

7

8

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ...........................................15, 20, 24

9

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021) ...........................................................................15

10

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .....................................................15

11

12

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) .........................................................................15

13

14

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...............................................................................18

15

16

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .................................................................................9

17

*In re Solara Med. Supplies Data Breach Litig.*,
   No. 3:19-CV-02284-H-KSC, 2022 WL 1174102 (S.D. Cal. Apr. 20, 2022) ......13

18

19

*In re TikTok, Inc., Consumer Privacy Litig.*,
   617 F. Supp. 3d 904 (N.D. Ill. 2022)....................................................................14

20

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) .........................................................................12

21

22

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 42112811 (N.D. Cal. Jul. 22, 2020) ....passim

23

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .............................................................................24

24

*Kent v. Hewlett-Packard Co.*,
   No. 5:09-CV-05341-JF HRL, 2011 WL 4403717 (N.D. Cal. Sept. 20, 2011) ....22

25

26

*Lane v. Facebook*,
   696 F. 3d 811 (9th Cir. 2012) ................................................................................6

27

28

- vi -

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3
*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................. 10, 19

4
*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 12, 18

5

6
*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................ 12, 18, 19

7

8
*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ......................................................................... 22

9
*Perkins v. Linkedin Corp.*,
   No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016) .............. 15

10

11
*Phillips Co. v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................... 24

12
*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ......................................................................... 19

13

14
*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
   303 U.S. 283 (1938) ...................................................................................... 18

15

16
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ......................................................................... 22

17
*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ...................................................................................... 23

18

19
*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ....................................................................... 23

20
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................. 20, 21

21

22
### Statutes/Rules

23
28 U.S.C. § 1292(b) ........................................................................................ 17

24
28 U.S.C. § 1332(d)(2) ...................................................................................... 2

28 U.S.C. § 1441(a) .......................................................................................... 2

25
Cal. Civ. Code § 1542 ....................................................................................... 8

26
Fed. R. Civ. P. 23(a) ....................................................................................... 20

27
Fed. R. Civ. P. 23(a)(1) ................................................................................... 21

28

JOINT MOTION FOR PRELIMINARY APPROVAL
CASE NO. 323-CV-2005-L-SBC

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

Fed. R. Civ. P. 23(b) ........................................................................20

Fed. R. Civ. P. 23(b)(3) .....................................................20, 21, 23

Fed. R. Civ. P. 23(c)(2)(B) ..............................................................24

Fed. R. Civ. P. 23(e)(1)(B) ..............................................................24

Fed. R. Civ. P. 23(e)(2)......................................................................9

Fed. R. Civ. P. 23(e)(2)(A) ..............................................................10

Fed. R. Civ. P. 23(e)(2)(B) ..............................................................12

Fed. R. Civ. P. 23(e)(2)(C) ........................................................12, 19

Fed. R. Civ. P. 23(e)(2)(C)(ii) .........................................................19

Fed. R. Civ. P. 23(e)(3).......................................................................9

Fed. R. Civ. P. 23(g)(1)(A)(i-iv) ......................................................25

Fed. R. Civ. P. 23(g)(1)(B) ..............................................................25

Fed. R. Civ. P. 9(b) ..........................................................................17

**Other Authorities**

Fed. R. Civ. P. 23(e)(2)(B) 2018 Adv. Comm. Note .............................12

# I.     **INTRODUCTION**

In September 2023, Defendant The Zalkin Law Firm, P.C. ("Zalkin") notified 524 former clients that their names, addresses, dates of birth, driver's license and identification numbers, Social Security numbers, medical information, and other sensitive details may have been accessed by an unauthorized third party through a data security incident on its networks and servers ("Incident"). As a result, Plaintiff Ariana Deats ("Representative Plaintiff"), on behalf of herself and all those similarly situated, filed this case in Superior Court, alleging (1) Negligence, (2) Breach of Implied Contract, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing, (4) Violations under California's Unfair Competition Law ("UCL"), and (5) Unjust Enrichment. Thereafter, Zalkin removed the case to this Court.

After exchanging key information through informal discovery, meeting and conferring regarding arguments Zalkin intended to raise on a motion to dismiss, and conducting multiple rounds of settlement discussions, the Parties reached a revised settlement agreement for a non-reversionary common fund of $285,000 that provides make-whole recovery through payments to each of the identified class members. This represents a strong recovery when viewed in comparison to what could be achieved through trial and when considering the significant risk, cost, and delay of further litigation in this Court and on appeal. Importantly, the revised settlement addresses the concerns identified by this Court in its order denying preliminary approval of the initial settlement, and increases the funds allocated for class members. Most significantly, the revised settlement (1) narrows the class to the 524 former clients who were actually provided notice from Zalkin, and (2) reduces the percentage of attorney's fees requested by Plaintiff's Counsel.[1] Accordingly, the Parties jointly and respectfully request that the Court preliminarily approve the revised settlement.

---

[1] Moreover, neither the original settlement agreement nor the revised settlement agreement contained a clear-sailing provision, and any reference to such a provision in the original motion was inadvertent.

402897030.3

## II.    SUMMARY OF THE LITIGATION

### A.    Factual Allegations

Plaintiff alleges unauthorized individuals placed malicious code on Zalkin's website that allowed those individuals to access the names, addresses, dates of birth, driver's license and identification numbers, Social Security numbers, medical information, and other sensitive information of Zalkin's clients. Complaint ¶ 1. Plaintiff alleges that a known cybercriminal group—BlackCat—announced on its website that it perpetrated this unauthorized access and claimed to have exfiltrated "415.63 GB of sexual harassment lawsuit data, with all records, notes, evidence, depositions, [and] personal information." *Id*. ¶ 3. Plaintiff alleges that although Zalkin learned of the Incident on April 6, 2023, it did not start notifying its clients until September 6, 2023.[2] *Id*. ¶¶ 2, 5. Plaintiff received such a notice, dated September 8, 2023, and subsequently filed this suit seeking damages for lost time, the threat of future harm, out-of-pocket expenses, and other injuries related to this event. *Id*. ¶¶ 5, 15, Relief Sought ¶¶ 1–9.

While Zalkin vehemently denies liability and maintains that Plaintiff's claims and allegations would fail on the merits, in the interest of avoiding the cost and uncertainty inherent in litigation, Zalkin has agreed to settle this matter.

### B.    Litigation History

#### 1.    Litigation

On October 30, 2023, Zalkin removed this case from San Diego County Superior Court to this Court under the Class Action Fairness Act, 28 U.S.C. §§ 1441(a) and 1332(d)(2). ECF No. 1. Because Plaintiff's Complaint sought damages for uncertain harms that can vary widely in value, including for fraud and emotional distress, and because the original proposed class definition was broader than the class definition

---

[2] Through informal discovery, the Parties determined that 524 clients were informed by Zalkin, and the Parties have accordingly limited the Settlement Class and release to those individuals. Declaration of Scott Edward Cole ("Cole Decl.") ¶ 14.

proposed in the revised settlement agreement, Zalkin took the position that there was a reasonable possibility that the amount in controversy could exceed $5,000,000. As to the merits, however, Zalkin maintains that damages are likely unrecoverable because of their speculative nature and the need for individualized inquiry would preclude class certification. Following removal, the Parties exchanged information in connection with negotiations for a class-wide settlement. Cole Decl. ¶¶ 10–14. With these exchanges of data, Plaintiff's Counsel was armed with a sufficient understanding of the relative strengths and weaknesses of the claims and defenses to make an informed decision about fair resolution. *Id.* ¶¶ 7–9.

### 2.    Initial Round of Negotiations

Between November 2023 and January 2024, the Parties engaged in extensive settlement discussions and exchanged informal discovery. During this process, Class Counsel learned that Zalkin had already voluntarily offered to provide and pay for identify theft monitoring services for the 524 putative class members. Cole Decl. ¶ 10. Zalkin also informed Plaintiff that it intended to file a motion to dismiss raising numerous legal challenges each claim (described in more detail below). Due to the Parties' extensive experience in data privacy and class action litigation, the Parties were able to determine the underpinning principles and underlying chances of success in the matter relatively quickly, focusing on negotiating a Settlement Fund[3] first, and then fine-tuning additional terms and vetting Claims Administrators to obtain the best cost bid. *Id.* ¶¶ 10–11. The Parties ultimately reached a settlement in principle in December and continued to negotiate the long form agreement through January. Cole Decl. ¶ 11. This resulted in an initial settlement agreement. *Id.*

Importantly, during these negotiations, Zalkin removed all clear-sailing language from the underlying settlement documents. Cole Decl. ¶ 13. The original motion for preliminary approval inadvertently included a reference to such an

---

[3] Unless otherwise defined, the capitalized terms in this motion are defined in the Settlement Agreement attached as Exhibit A to the Declaration of Scott Edward Cole.

agreement, but the underlying Settlement Agreement clearly does not include any such language, which was purposely removed during settlement negotiations. *See* ECF No. 11-2 at 15–27. This Joint Motion reflects that Zalkin maintains its right to oppose Class Counsel's request for attorneys' fees if applicable.

### 3.    Initial Motion for Preliminary Approval

Plaintiff filed her initial motion for preliminary approval on February 15, 2024. ECF No. 11. The Court denied that motion on April 8, 2024. ECF No. 13.

### 4.    Subsequent Round of Negotiations

After the Court's order, the Parties conducted further negotiations and met and conferred through email and multiple telephone conferences to prepare a revised Settlement Agreement that addressed the Court's concerns with the Parties' initial settlement and Plaintiff's initial motion for preliminary approval. Cole Decl. ¶ 14. The revisions include a narrower settlement class and reduced attorney's fees demand (30% of the Settlement Fund instead of 35%). The Parties now jointly seek preliminary approval of the revised Settlement Agreement.

## III.    TERMS OF THE SETTLEMENT

### A.    The Settlement Class

The Settlement Class is defined as:

> All individuals who were notified by Defendant The Zalkin Law Firm, P.C. in September 2023 that their protected health information or personally identifiable information may have been exposed to unauthorized third parties as a result of the data incident discovered by Defendant on or about April 6, 2023.

Cole Decl., Ex. A ("Agreement") at p. 1. This revised definition narrows the Class to those 524 individuals who received notice from Zalkin, which narrows the release and increases (and makes certain) the minimum amount available to each Class Member.

### B.    The Settlement Benefits

The Settlement provides for a non-reversionary Settlement Fund of $285,000. Agreement § IV(A). At minimum, this fund would be shared equally among the 524

JOINT MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:23-CV-2005-L-SBC

individuals who were notified by Zalkin that their protected health information ("PHI") or personally identifiable information ("PII") may have been exposed to unauthorized third parties. This is an extraordinary result in a data privacy case where values per class member in comparable cases are often much lower given the inherent difficulty in quantifying damages and tracing damages to the particular data breach. *See infra* § 4.A.3; Cole Decl. ¶ 30.

All costs of the Settlement, including the Settlement Shares, Claims Administration Fees, Attorneys' Fees (if any), and Representative Plaintiff's Service Award (if any) are to be paid from the Settlement Fund. Agreement § IV(B). There will be no reversion of the Settlement Fund to Zalkin regardless of the claims rate. Agreement § IV(A). Each Class Member who submits a timely and valid form will receive one Settlement Share from the Settlement Fund. Agreement § V(A). The Settlement Shares will be *pro rata* cash distributions from the Settlement Fund. Agreement § IV(E).

If any Class Member fails to cash his or her Settlement Share check within 90 days[4], because there is no reversion to Zalkin, the total amount of uncashed checks will be paid to Child USA (www.childusa.org). Child USA is a nonprofit think tank devoted to ending child abuse and neglect. Child USA fights for the rights of children to be free from child sex abuse through legal reform of the statutes of limitation and federal bankruptcy law, ending child marriage, and holding institutions accountable. *See* www.childusa.org/about-us. While Class Members who submit a claim will receive direct financial compensation from the Settlement, Child USA's stated mission to stop sex abuse furthers the interests of any non-participating Class Members, many of whom suffered sexual abuse, *see, e.g.*, *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) ("A *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members,' and must not benefit a group 'too remote from the plaintiff class[.]'" (citations omitted)), and that mission has the

---

[4] The Agreement allows for extensions if necessary. Agreement § V.E.

requisite nexus to this Action, the goals of the underlying statutes and claims, and the interests of the Class, *see, e.g.*, *Lane v. Facebook*, 696 F. 3d 811, 819–20 (9th Cir. 2012) ("[A] district court should not approve a *cy pres* distribution unless it bears a substantial nexus to the interests of the class members[, which] . . . 'must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members.'" (citations omitted)).

## C.    Notice, Notice Plan, and Claims Administration

Within 20 days of the Court's entry of the Preliminary Approval Order, the Settlement Administrator will send the Class Notice via First-Class Mail or email to Settlement Class Members. Agreement § VI(B)(2). Because the Class has been narrowed to only those 524 individuals who received notice from Zalkin in September 2023, notice of this Settlement will reach all 524 individuals who would be releasing any claims.

From the date of the first Mailed Notice, the Claims Administrator will establish a dedicated Settlement website that includes the Settlement Agreement, Class Notice, and Claim Form. Agreement § VI(B)(3). Class Counsel will propose the format and content of the Settlement website for approval by Zalkin. The Claims Administrator will maintain and update the website throughout the Claims Period. The Settlement website will also include the relevant pleadings from this Action, including the Complaint and Motion for Final Approval. A toll-free number with interactive voice responses and FAQs will also be made available to address Settlement Class Members' inquiries. The Settlement website will not include any advertising and will remain operational until 30 days following the Effective Date (as defined in the Agreement), at which time the Claims Administrator will terminate the Settlement website and transfer ownership of the website to Zalkin.

## D.    The Settlement Administrator

The Parties request that the Court approve CPT Group as the Settlement Administrator. Information about CPT's credentials and experience is provided in the

- 6 -

accompanying Declaration of Julie Green, which includes information regarding CPT's handling of Class Member data and its insurance coverage. CPT agreed to a flat fee of $15,000, a reasonable amount in relation to the size of the Class and value of the Settlement. *See* Cole Decl. ¶ 23. Class Counsel engaged CPT to administer settlements in several cases in the last two years and is confident in its ability to effectively administer this Settlement. *Id.* Ms. Green's declaration also details the prominent, multistate class action settlements administered by CPT in the recent past. *See* Declaration of Julie Green ¶ 6, Ex. A.

### E. <u>Attorneys' Fees, Costs, and Service Award</u>

Plaintiff will move the Court for an award of attorneys' fees for Class Counsel. Plaintiff will request a reduced amount to increase the benefit to the Class, which will not exceed $85,500,[5] plus reimbursement of litigation costs. Agreement § IV(D). Class Counsel will also request a Service Award payment to Plaintiff in the amount of $3,500. Agreement § IV(C).

Again, the revised settlement agreement does not include a clear-sailing provision, nor was one included in the initial settlement. *See* Cole Decl. ¶ 13. Zalkin has always reserved its right to oppose any award of fees should it believe such an award is not supported by law after reviewing the fee motion.

### F. <u>Released Claims</u>

Upon entry of the Final Approval Order, each Settlement Class Member, including Plaintiff, will be barred from asserting against Zalkin or any Released Parties, any claims that are released by operation of the Settlement Agreement and the Final Approval Order. Agreement § IX(A). Each Settlement Class Member, including Plaintiff, will be deemed by operation of the Agreement to have fully released Zalkin and the Released Parties from any and all of the Released Claims and will be deemed to have also released Unknown Claims. *Id.* This includes a release of all provisions,

---

[5] This amount reflects a 30% of the Settlement Fund instead of the 35% originally requested.

1    rights, and benefits conferred by any law of any state, province, or territory of the

2    United States similar to California Civil Code § 1542. Agreement § IX(B). The scope

3    of the Released Claims is limited to claims in connection with the claims pleaded or

4    that could have been pleaded in the Action based on the facts, subject matter, and

5    factual and legal allegations in the Action. Agreement § IX(A).

6    **IV.    LEGAL ARGUMENT**

7        The settlement approval procedures take place over three stages. First, the

8    parties present a proposed settlement asking the Court to provide preliminary approval

9    for both (a) the settlement class and (b) the settlement terms. *See, e.g.*, *Churchill Vill.,*

10   *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (discussing the district court's

11   use of a preliminary approval order). Second, if the Court preliminarily approves the

12   settlement and class: (1) notice is sent to the class describing the terms of the proposed

13   settlement; (2) class members are given an opportunity to object or opt out; and (3) the

14   court holds a fairness hearing at which class members can appear and support or object

15   to the settlement. *See id*. Third, taking account of all of the information learned during

16   this process, the Court decides whether to give final approval to the settlement and

17   class certification. *See id*.

18       In this motion, the Parties jointly seek: (1) preliminary approval of the revised

19   class action Settlement; (2) preliminary certification of the Class for purposes of the

20   revised Settlement; and (3) provisional appointment of Class Counsel, Class

21   Representative, and Class Administrator.

22       **A.    The Revised Settlement Meets the Requirements for Preliminary**

23              **Approval under Rule 23(e)**

24       Settlements that take "place prior to formal class certification" require "a higher

25   standard of fairness" and a "more probing inquiry." *See Hanlon v. Chrysler Corp.*, 150

26   F.3d 1011, 1026 (9th Cir. 1998). These requirements are necessary because

27   "settlements in class actions present unique due process concerns for absent class

28   members, including the risk that class counsel may collude with the defendants." *In re*

- 8 -

*Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (internal quotations omitted). As a result, the Court must review the relevant documents and conduct a searching inquiry "to determine whether [the proposed settlement] is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027; Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Because several of these factors cannot be fully examined until the Final Fairness Hearing, at this preliminary approval stage, the Court conducts a less searching inquiry of each factor and only requires that the proposed settlement be within the range that would likely receive final approval by the Court. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (discussing that at the preliminary stage, courts merely conduct a "cursory" analysis of fairness, seeking merely to identify any "glaring deficiencies" before sending notice to class members).

In addition, Rule 23(e)(2) requires courts to apply the heightened scrutiny set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011), to all class action settlements. *Briseno v. Henderson*, 998 F.3d 1014, 1024 (2021). Based on this standard, the Court has a duty to look for any "subtle signs that

1  class counsel has allowed pursuit of their own self-interests and that of certain class

2  members to infect the negotiations." *Bluetooth*, 654 F.3d at 947.

3        This Settlement, like the initial settlement, contains none of the "subtle signs"

4  of collusion that the Ninth Circuit has warned about. *See, e.g.*, *Briseno*, 998 F.3d at

5  1023. This Settlement does not include a "reverter" clause to Zalkin, nor does it include

6  a "clear sailing" provision for attorneys' fees to Class Counsel. *See id*. In addition,

7  Class Counsel does not receive a "disproportionate distribution of the settlement." *See*

8  *id*. Instead, this Settlement offers significant monetary recovery to Class Members,

9  falls within the range of reasonableness for preliminary approval, and should give the

10  Court confidence that it will be able to grant final approval after Class Members are

11  given an opportunity to express their views.

12              1.    Plaintiff and Class Counsel Adequately Represented the Class

13        The first procedural concern asks whether the proposed settlement was the result

14  of adequate representation. Fed. R. Civ. P. 23(e)(2)(A). One of the hallmarks of

15  adequate representation is a thorough investigation and assessment of the class

16  members' claims. *See id.*, Adv. Comm. Note. Formal discovery is not required, but

17  counsel should have sufficient information to make informed decisions at the

18  bargaining table. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.

19  1998).

20        Here, Class Counsel were well prepared to negotiate a beneficial settlement for

21  Class Members. In addition to a comprehensive pre-filing investigation, they

22  conducted extended negotiations with Zalkin's counsel. Cole Decl. ¶¶ 7–14. And after

23  this Court denied Plaintiff's initial motion for preliminary approval, Class Counsel

24  worked extensively with Zalkin's counsel to reach a revised settlement that addressed

25  the Court's concerns, including increasing the benefit to the Class by limiting the Class

26  and release to only those 524 individuals who were notified by Zalkin that their PHI or

27  PII may have been exposed to unauthorized third parties. *Id.* ¶ 14. Importantly, Class

28  Counsel has substantial experience in complex class action litigation, including data

privacy cases. *Id*. ¶ 24–29. Based on Class Counsel's extensive experience, investigation, and settlement negotiations, Class Counsel fully endorses the Settlement as falling within the range of reasonableness. *Id*. ¶¶ 15–19, 30–31.

Similarly, Plaintiff researched and identified qualified counsel, provided information on her claims and damages through informal discovery, and risked being further targeted for identity theft by putting her name on this litigation. *Id.* ¶¶ 20–22. Accordingly, the Plaintiff and Class Counsel have adequately represented the Class (and will continue to do so).

>    2.    The Settlement Resulted from Informed, Arm's-Length Negotiations of Experienced Counsel

The initial settlement was reached after more than two months of contentious negotiations. *Id*. ¶¶ 9–12. The Parties reached a settlement after both sides had a chance to discuss and consider the potential damages and the various arguments Zalkin intended to make on a motion to dismiss. And after this Court denied Plaintiff's initial motion for preliminary approval, the Parties returned to the bargaining table to negotiate a revised Settlement that addressed the Court's concerns. *Id*. ¶ 14.

The Parties exchanged multiple rounds of emails and conducted conference calls to reach the revised agreement at issue here. *Id*. ¶ 14. As before, the Parties negotiated the Settlement Fund and Class definition first, before fine-tuning the administration costs, attorneys' fees, service award, and other details. *Id*. Through this process, the Parties agreed to narrow the class to the 524 individuals who were notified by Zalkin that their PHI or PII may have been exposed to unauthorized third parties. *Id*. As before, the Settlement does not contain a clear sailing provision, reversion clause, or any other "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *See Briseno*, 998 F.3d at 1023 (quoting *In re Bluetooth*, 654 F.3d at 947); *see also* Cole Decl. ¶¶ 13, 30–31.

Taking into consideration the stage of discovery, extensive meet and confer processes, experience of the counsel negotiating the Settlement, and length of

negotiations, this Court should conclude the Settlement was reached through a procedurally fair process for the Class. Fed. R. Civ. P. 23(e)(2)(B), 2018 Adv. Comm. Note; *see, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (holding that time and effort spent examining and investigating claims supports preliminary approval because it indicates that there was no collusion).

### 3. The Relief Provided for the Class Is Significant When Considering the Risks of Continued Litigation

The proposed Settlement offers meaningful monetary recovery to each of the 524 Class Members who were notified by Zalkin that their PHI or PII may have been exposed to unauthorized third parties. The benefits conferred are fair and adequate compared to other similar cases. In addition, the collective relief is very favorable considering the Rule 23(e)(2)(C) factors. Importantly, when considering whether the amount of a settlement is adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). In addition, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

#### a. The Benefits of the Revised Settlement Are Superior or Comparable to Those That Have Been Approved in Other Cases

524 individuals were notified that they were potentially affected by the Incident. However, Plaintiff was the only individual to come forward and file a lawsuit. Therefore, it is unclear how many, if any, of these other 523 individuals will claim injury. With that said, even after administration costs, attorneys' fees, and a service award, the Settlement Fund will provide approximately $181,000 to the Class. If all 524 Class Members submit a claim, each would receive a minimum of approximately

$345. It is more likely, however, that Class Members without damages will not file a claim, allowing for more funds to be distributed *pro rata* amongst those who do. Even with a 100% claims rate, $345 per person represents a significant recovery. This represents an excellent outcome for the Class because it is unlikely more than a few, if any, individual Class Members would be able to prove damages at trial. Yet under the Settlement, Class Members are not required to provide any documentation to establish damages and will automatically qualify for at least $345 (and will receive more because it is likely the claims rate will be below 100%). Accordingly, few if any Class Members are likely to have their individual claims meaningfully discounted, and because there is no reversion to Zalkin, Class Members who submit claims will be justly compensated. Cole Decl. ¶¶ 30, 31.

In this case, as the Parties discussed, it will be extremely burdensome to determine the extent of the data exposed and whether all proposed Class Members that were notified were actually impacted. Many proposed Class Members may not have had any sensitive information exposed or may only have had inconsequential information exposed. Regardless, this Settlement compares favorably with other settlements that have been approved in data privacy cases involving the possible exposure of extremely sensitive information, including potentially embarrassing medical history and PHI. *See, e.g.*, *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192, at *3 (N.D. Cal. Jan. 16, 2024) (granting final approval of $10 million settlement to class of 1.4 million members of a health plan who suffered unauthorized exposure of PII and PHI, for average of $7.41 per person, with option to choose credit monitoring in lieu of payment); *In re Solara Med. Supplies Data Breach Litig.*, No. 3:19-CV-02284-H-KSC, 2022 WL 1174102, at *7 (S.D. Cal. Apr. 20, 2022) (preliminarily approving $5,060,000 settlement to class of approximately 100,000 individuals who were notified by defendant that their PII or PHI may have been compromised, including "115,747 instances of medical information," and guaranteeing only $100 for those who file claims); *Hashemi v.*

*Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *2, *7 (C.D. Cal. Feb. 22, 2022) (preliminarily approving $500,000 settlement and credit monitoring services to class of over 100,000 individuals who may have had their PII, including, medical information and health insurance information, compromised in a data breach; and collecting cases with estimated settlement values of less than $1 per class member); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (Koh, J.) (granting final approval of $115 million settlement to class of 79.15 million, for average of $1.45 per person, who suffered electronic theft of personally identifiable information and personal health information).

And this Settlement far exceeds the recovery per class member in cases involving less consequential PII. *Carter v. Vivendi Ticketing US LLC*, No. SACV 22-01981-CJC, 2023 WL 8153712, at *1–*2 (C.D. Cal. Oct. 30, 2023) (granting final approval of $3 million settlement for class of 437,310 individuals whose PII was subject to unauthorized access); *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904 (N.D. Ill. 2022) (granting final approval of settlement where each nationwide class member would receive $27.19 and Illinois subclass members would receive $163.13 for compromised facial recognition data, biometric information, and other PII); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 42112811 at *10, *22 (N.D. Cal. Jul. 22, 2020) (Koh, J.) (approving a settlement fund of $117.5 million with a settlement class size of approximately 194 million and collecting cases where recovery was only a few dollars per person or less); *Giroux v. Essex Property Trust, Inc.*, No. 16-cv-01722-HSG, 2019 WL 1207301 at *3 (N.D. Cal. Mar. 14, 2019) (granting final approval of $350,000 settlement where class members receive approximately $70 and credit monitoring services for compromised Social Security numbers, names, tax forms, and home addresses); *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 5076203, at *2, *5 (N.D. Cal. Sept. 20, 2016) (granting final approval of $68 million settlement where class members who made claims received approximately $20 plus a refund for the service, and subclass members

1  received either $19.48 or $39.48); *Perkins v. Linkedin Corp.*, No. 13-CV-04303-LHK,

2  2016 WL 613255, at *2, *9 (N.D. Cal. Feb. 16, 2016) (granting final approval of $13

3  million settlement where the class size was approximately 20.8 million and each

4  claimant received approximately $20); *In re Linkedin User Privacy Litig.*, 309 F.R.D.

5  573, 581, 588 (N.D. Cal. 2015) (granting final approval of $1.25 million settlement

6  where the class size was estimated to be 800,000 and each claimant received $14.81).

7      Indeed, some privacy class actions have even settled for non-monetary relief

8  alone. *See, e.g.*, *Campbell v. Facebook Inc.*, No. 13-cv-05996-PJH, 2017 WL 3581179,

9  at *4, *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of settlement providing

10 for declaratory and injunctive relief in litigation alleging Facebook engaged in user

11 privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View

12 Elec. Commc'ns Litig.*, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting

13 final approval of settlement providing injunctive relief and creating a non-distributable

14 *cy pres* settlement fund in litigation alleging Google violated privacy by illegally

15 gathering Wi-Fi network data), *aff'd*, 21 F.4th 1102 (9th Cir. 2021).

16     These cases demonstrate that the proposed settlement agreement offers

17 significant benefits to the potential class member and is a fair and equitable one.

18          b.    The Settlement Is Justified In Light of the Risks, Expense,
                  and Uncertainty of Ongoing Litigation.
19

20     While Plaintiff believes her case is strong, ongoing litigation will require

21 Plaintiff and the Class to take on significant risks of expenses, delays, and negative

22 outcomes. Notably, data privacy cases are particularly complex and expensive by

23 nature. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL

24 256132, at *32–33 (N.D. Ga. Mar. 17, 2020) (recognizing the complexity and novelty

25 of issues in data breach class actions), *affirmed in part, reversed in part and remanded

26 by In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021).

27 And courts recognize data breach cases as among the most risky and uncertain of all

28 types of class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*,

2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

This case is no exception. It involves hundreds of Class Members, complicated and technical facts, a well-funded and motivated defendant (who denies all wrongdoing), and contested central issues relating to statutory standing, class certification, liability, and damages.

Moreover, the settlement agreement removes the uncertainty and expense of litigating complex legal challenges to the complaint. If the Parties were unable to reach a settlement, Zalkin intended to move to dismiss the complaint on several grounds. The Parties met and conferred on the motion to dismiss prior to reaching a settlement. In the motion, Zalkin would have raised the following arguments:[6]

First, Plaintiff asserts a claim for negligence, but that claim is barred because she seeks to recover only economic losses, and purely economic losses are not recoverable in tort. In addition, even if this claim was not barred by the economic loss rule, Plaintiff's negligence claim still fails because she does not plead how much, if any, out of pocket losses she incurred, and does not establish that any such costs are appreciable or non-speculative. Therefore, the alleged harms are too speculative to satisfy the damages element of a negligence claim.

Second, Plaintiff asserts equitable claims under the UCL and for unjust enrichment, but those claims fail outright because (1) unjust enrichment is not a valid cause of action under California law, and (2) Plaintiff does not plead that she lacks adequate legal remedies to allow her to recover in equity. Instead, she asserts legal claims for negligence, breach of contract, and breach of the implied covenant of good faith and fair dealing that seek to recover damages for the same conduct underlying her purported equitable claims.

Third, even if Plaintiff's legal remedies were inadequate, she lacks statutory standing to assert her UCL claim because she does not allege that she lost money or

---

[6] Plaintiff does not concede these arguments and reserves the right to contest them if the case moves forward.

JOINT MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:23-CV-2005-L-SBC

property. In addition, her conclusory claims under the UCL's fraudulent prong must be dismissed because they do not meet Rule 9(b)'s heightened pleading standard.

Fourth, Plaintiff fails to state a claim for breach of implied contract because her conclusory allegations do not state which specific terms of the purported implied contract were breached. In addition, like her negligence claim, she pleads no cognizable contract damages. Similarly, her claim for breach of the implied covenant of good faith and fair dealing fails because her conclusory allegations do not identify what underlying contract or contract terms are at issue. Because her allegations lack the requisite clarity, neither Zalkin nor the Court can determine what benefits that purported contract provided, nor can they determine whether any such contract was breached, interfered with, or whether its purpose was frustrated. Plaintiff's implied covenant claim does not even state whether the covenant arises from another express contract or whether she is attempting to insert multiple levels of implication to her failed breach of implied contract claim. As such, her purported implied contract and covenant claims do not satisfy Rule 8 and must be dismissed. For all of these reasons, if litigation continues, Zalkin believes the Court should dismiss Plaintiff's complaint with prejudice at the pleading stage and the Class would receive nothing.

And even if the complaint survived these well-grounded pleading challenges, Zalkin would consider seeking mandamus relief in the Ninth Circuit, or to certify novel controlling questions of law at issue under 28 U.S.C. § 1292(b). While interlocutory appellate proceedings played out—unless the Court granted a stay, which would further delay Class recovery—the Parties would undoubtedly engage in costly fact and expert discovery involving technical information and damages modeling. Establishing liability at trial would require countless hours of costly investigation, discovery, reporting, and testimony from data security and financial industry expert witnesses. In addition, Zalkin will vigorously oppose a class certification motion, and also move for summary judgment. And even if Plaintiff were successful at trial, given the relative novelty of the legal theories underlying her claims, it would face significant scrutiny

by the Ninth Circuit on appellate review, which would further delay or completely eliminate any class recovery.

### c. CAFA Removal Is Not An Admission That Damages Would Exceed $5 Million On the Merits

For CAFA removal, "[i]n determining the amount in controversy, courts first look to the complaint[, and g]enerally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Removal requires "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). By removing a case, a party is not making any concession on the amount of actual damages that could be recovered. Here, for the reasons already stated above, the amount of recoverable damages remains uncertain, justifying a settlement. Moreover, the revised settlement agreement narrows the class definition proposed in the original complaint, cabining the potential damages further.[7]

While Plaintiff maintains that it could plausibly recover more than this Settlement, the risks associated with years of continued litigation counsel in favor of this Settlement, which provides significant and certain relief for all 524 Class Members in a timely fashion. Importantly, as noted, it is well settled that a proposed settlement may be acceptable even though it amounts to only a percentage of the potential recovery that might be available to the class members at trial. *See e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.") (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *Nat'l Rural Tele. Coop.*, 221 F.R.D. at 527 (holding that it is "well settled law that a proposed settlement may be acceptable

---

[7] To the extent the Court is of the opinion that this narrowing of the proposed class warrants a remand to state court, the parties do not object.

1  even though it amounts to only a fraction of the potential recovery").

2      In short, "counsel took a particularly high risk litigating this matter because the

3  type of data breach injury asserted is legally unproven, technically complex, and

4  potentially of little value." *Harbour*, 2024 WL 171192, at *4. In addition, Zalkin's

5  "denial of liability means that Plaintiff[] would continue to face 'serious hurdles.'" *Id.*

6  (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). "Because

7  a negotiated resolution provides for a certain recovery in the face of an uncertain legal

8  theory, this factor favors the settlement." *Id.* (citing *Curtis-Bauer v. Morgan Stanley &*

9  *Co., Inc.*, No. 06-C-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)

10  ("Settlement avoids the complexity, delay, risk and expense of continuing with the

11  litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff

12  class.")); *see Linney*, 151 F.3d at 1242 ("This court has aptly held that 'it is the very

13  uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation

14  that induce consensual settlements. The proposed settlement is not to be judged against

15  a hypothetical or speculative measure of what might have been achieved by the

16  negotiators.'") (quoting *Officers for Justice*, 688 F.2d at 625).

17      Accordingly, the relief provided is more than adequate when considering the

18  Rule 23(e)(2)(C) factors.

19          4.    The Settlement Structure is Equitable

20      The proposed Settlement Fund treats each Class Member equally—each

21  Settlement Class Member who submits a Claim Form will receive a Settlement Share,

22  which will be distributed *pro rata*. There will be no need for any Class Members to

23  provide documentation, attest to lost time, or otherwise substantiate their right to a

24  Settlement Share. All Class Members who wish to get paid will be paid.

25      The claims process here is designed to be simple and fast, yet comprehensive

26  enough to avoid fraud and to ensure fair and equitable treatment of potential individual

27  damages. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). All Settlement Class Members can submit

28  a claim that entitles them to a simple cash payment. There is no reversion to Zalkin,

JOINT MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:23-CV-2005-L-SBC

1  which maximizes the amount Class Members receive.

2      Courts have approved similar processes in data privacy and breach cases, *see,*

3  *e.g.*, *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 365, 378 (N.D. Cal. 2021); *In re Yahoo!*,

4  2020 WL 4212811, at *12, and the proposed plan is more favorable than other

5  approved settlements that required documentation for cash payments, *see, e.g.*, *In re*

6  *Anthem*, 327 F.R.D. at 328, 332 (requiring supporting documentation for claims of lost

7  time and out-of-pocket expenses); *In re Equifax*, 2020 WL 256132 at *2, *8 (requiring

8  documentation for out-of-pocket expenses that showed class members suffered fraud,

9  identity theft, or misuse of personal information traceable to data breach).

10      **B.    The Proposed Settlement Class Should be Certified**

11      In the settlement context, courts must pay "undiluted, even heightened,

12  attention" to class certification requirements, *Amchem Products, Inc. v. Windsor*, 521

13  U.S. 591, 620 (1997), and conduct a "rigorous analysis," *Wal-Mart Stores, Inc. v.*

14  *Dukes*, 564 U.S. 338, 349–50 (2011). The party seeking class certification bears the

15  burden of demonstrating that the four requirements of Rule 23(a) and at least one of

16  the requirements of Rule 23(b) have been satisfied. *See Dukes*, 564 U.S. at 349–50.

17      Under Rule 23(a), a class action is only proper if:

18      (1) the class is so numerous that joinder of all members is impracticable;

19      (2) there are questions of law or fact common to the class;

20      (3) the claims or defenses of the representative parties are typical of the claims

21          or defenses of the class; and

22      (4) the representatives will fairly and adequately protect the interests of the class.

23  Fed. R. Civ. P. 23(a). If the Rule 23(a) prerequisites are met, the Court must decide

24  whether certification is appropriate under Rule 23(b). In this motion, the Parties seek

25  certification of the Class under Rule 23(b)(3), which authorizes certification if:

26      [T]he court finds that the questions of law or fact common to class
27      members predominate over any questions affecting only individual
28      members, and that a class action is superior to other available methods for

JOINT MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:23-CV-2005-L-SBC

fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3), and should be certified.[8]

### 1.    The Settlement Class Satisfies Rule 23(a)

**Numerosity.** The Settlement Class consists of 523 individuals, making joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1).

**Commonality.** Plaintiff's and Class Members' claims depend upon common contentions of fact and law that could be resolved for all through a single proceeding. *Dukes*, 564 U.S. at 350. For example, Plaintiff's negligence claim turns on the contention that Zalkin implemented substandard security protocols and procedures that allowed unauthorized users to gain access to Class Members' case files and sensitive information. Complaint ¶¶ 27, 51. In addition, Plaintiff's breach of contract claim turns on the common contention that Zalkin promised, yet failed, to use certain specific security measures. *Id.* ¶¶ 27, 102. Each of these contentions depend only upon the nature of Zalkin's security protocols, which can be proven using generalized evidence applicable to the entire Class. *See In re Yahoo!*, 2020 WL 4212811 at *3 (certifying data breach settlement class where common issues existed as to whether Yahoo! employed sufficient security measures to protect class members' information).

---

[8] While Zalkin does not oppose class certification in this motion for purposes of settlement, it would vigorously oppose class certification in a contested setting.

**Typicality.** Typicality is satisfied because "the unnamed class members have injuries similar to those of the named plaintiffs and the injuries result from the same, injurious course of conduct." *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). Here, Plaintiff's claims are typical of the Settlement Class because they are all clients who allege they experienced the same incident of unauthorized access to files maintained by Zalkin. While it is likely that Plaintiff and the Class may allege varying degrees of injuries—and while Zalkin contends none experienced any injury—each harm will be based on the same data security incident and underlying conduct that allegedly led to that incident. In short, the claims arise from the same nucleus of facts relating to Zalkin's security protocols, pertain to a common defendant, and are based on the same legal theories.

**Adequacy.** Plaintiff is an adequate representative of the Settlement Class because she has actively participated in the litigation and continues to do so. Cole Decl. ¶¶ 20–22. Her commitment to the Class is demonstrated by her continued efforts to obtain Class relief even after this Court's initial denial of preliminary approval. *Id.* ¶ 22. She does not have conflicts with other Class Members because her claims are coextensive with those of the Class, *see Kent v. Hewlett-Packard Co*., No. 5:09-CV-05341-JF HRL, 2011 WL 4403717, at *1 (N.D. Cal. Sept. 20, 2011), and she has retained experienced counsel to represent the Class's interests, *see Staton v. Boeing Co.*, 327 F.3d 938, 957–58 (9th Cir. 2003). Cole Decl. ¶ 20–22. Class Counsel have decades of experience representing plaintiffs in complex class actions, including other cases involving data privacy and cybersecurity. Cole Decl. ¶¶ 25–29. They vigorously pursued Plaintiff's claims and engaged in extensive settlement negotiations that resulted in this favorable Settlement. Accordingly, Plaintiff and Class Counsel are adequate representatives.

### 2. The Settlement Class Satisfies Rule 23(b)(3)

**Predominance.** The predominance requirement is satisfied when class members' claims can be proven using common, class-wide evidence rather than

evidence that varies from class member to class member. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016). Because Plaintiff's claims are focused on the nature of Zalkin's security policies and protocols, they are well-suited for class treatment. Plaintiff contends that Zalkin's liability can be established largely, if not entirely, through class-wide evidence. There would be little need for Class Members to present individualized evidence until the damages phase, and it is well established that the need for individualized findings as to the amount of damages is not enough to defeat class certification. *See, e.g.*, *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016); *In re Yahoo!*, 2020 WL 4212811 at *7 (concluding that common questions regarding the nature of Yahoo!'s security measures predominated)*; In re Anthem*, 327 F.R.D. at 312 (reasoning that the focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile").

**Superiority.** Rule 23(b)(3) requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," and as noted:

> The matters pertinent to the findings include: (a) the class members' interest in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

This case is superior as a class action because there is low interest in prosecuting a multitude of claims in a variety of forums, and litigating separate actions would be overly laborious to the Class Members and the Court. This is evidenced by the lack of other lawsuits against Zalkin relating to the alleged event over a year later. Importantly, however, the Court need not consider manageability issues in the settlement context because "the proposal is that there be no trial," so manageability considerations are no obstacle to certification for purposes of Settlement. *See Windsor*, 521 U.S. at 620.

The class device is the superior method of adjudicating these claims against Zalkin because it promotes greater efficiency, and no realistic alternative exists. *See, e.g., Phillips Co. v. Shutts,* 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Courts have routinely recognized this in other data privacy cases where class-wide settlements have been approved. *See, e.g., In re Yahoo!*, 2020 WL 4212811 at \*8; *In re Equifax*, 2020 WL 256132 at \*45. In short, resolution of the predominant issues of fact and law through individual actions is impracticable here because the amount in dispute for individual Class Members is too small, the technical issues involved are too complex, and the required expert testimony and document review is too costly. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).

**C.    The Proposed Notice and Notice Program**

1.    The Notice Plan

Before final approval of a settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). When certified under Rule 23(b)(3), the notice must also be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice plan meets these requirements. It provides for direct mailed or emailed notice to the 523 Class Members who were notified by Zalkin that their information may have been exposed, all of whom have been identified from Zalkin's records. This notice is reasonably calculated, and narrowly focused, to reach all Class Members and apprise them of the Settlement.

2.    The Proposed Notice Adequately Informs Class Members of Their Rights and Options

In accordance with Rule 23(c)(2)(B), the Class Notice sets forth in clear, concise, and easily understood language, all required information, including the nature of the

action, the class definition, claims, issues, and defenses, the binding effect of a class judgment, and all available rights under the Settlement, including the right to opt out or object. *See* Cole Decl., Ex. D.

### D.    Settlement Class Counsel Should be Appointed

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts consider the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Here, Cole & Van Note has extensive experience prosecuting complex consumer class action cases, including data privacy cases, and has demonstrated its ability to negotiate a favorable settlement that guarantees significant and timely relief to the Class despite significant litigation risks posed by the defenses identified by Zalkin. Cole Decl. ¶¶ 24–29. Therefore, this Court should appoint Scott Cole of Cole & Van Note as Class Counsel.

### E.    Proposed Schedule

| Event | Date |
|---|---|
| Settlement Administrator sends Notice to the Settlement Class ("Class Notice Date") | Within 20 days after Entry of Preliminary Approval Order |
| Last day for Settlement Class Members to opt out, object, or make claims to the proposed Settlement | 45 days after Class Notice Date |
| Final Fairness Hearing | To Be Set By Court |

## V.   CONCLUSION

The Parties respectfully request that the Court grant preliminary approval.

Dated: May 13, 2024                                         **COLE & VAN NOTE**


By: /s/ Scott *Edward Cole*
    Scott Edward Cole, Esq.
    Laura Van Note
    Attorneys for Plaintiff ARIANA
    DEATS, and those similarly situated

Dated: May 13, 2024                                         **MANATT, PHELPS & PHILLIPS, LLP**


By: /s/ Benjamin E. Strauss
    Naeun Rim, Esq.
    Brandon P. Reilly
    Benjamin E. Strauss
    Attorneys for Defendant
    THE ZALKIN LAW FIRM, P.C.


## SIGNATURE ATTESTATION

I, Scott Edward Cole, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 13, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served today on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF and on counsel in the related cases to their respective emails per the below service list.

<u>*/s/ Scott Edward Cole*</u>
Scott Edward Cole, Esq.